[No. S139609. Apr. 7, 2008.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL CHRISTOPHER PITTO, Defendant and Appellant.

**COUNSEL**

Dennis P. Riordan, under appointment by the Supreme Court; Riordan & Horgan and Donald M. Horgan for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Catherine A. Rivlin, Christina Vom Saal and Gregg Zywicke, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BAXTER, J.**—Penal Code section 12022[1] provides various sentence enhancements for those who are "armed" (*id.*, subd. (a)), or in some cases, "personally armed" (*id.*, subd. (c)), with a firearm "in the commission of" specified offenses. In *People v. Bland* (1995) 10 Cal.4th 991 [43 Cal.Rptr.2d 77, 898 P.2d 391] (*Bland*), which involved the arming enhancement for assault weapons (§ 12022, subd. (a)(2)), we set forth the circumstances in which the trier of fact could infer that the defendant was "armed" with a gun "in the commission of" a drug crime, and the finding could thus be upheld as supported by sufficient evidence on appeal. Such circumstances exist where, during a drug offense, (1) the defendant knew of a gun's presence and location nearby, (2) the gun's proximity to the drugs was "not accidental or coincidental," and (3) the gun was available for his offensive or defensive use in committing the underlying offense. (*Bland, supra,* 10 Cal.4th at pp. 995, 1003.)

Here, defendant Michael Christopher Pitto, a convicted drug offender on bail at the time, was within arm's reach of both a gun and a saleable amount of methamphetamine in his vehicle when he encountered police. He knew the gun's location because, as he admitted at trial, he had purposefully placed it there. For the same reason, the proximity of the gun to the drugs was not merely "accidental or coincidental." (*Bland, supra,* 10 Cal.4th at pp. 995, 1003.) There was no dispute that, because of its location, the firearm was available for his offensive or defensive use with respect to the drug transportation and possession crimes of which he was convicted. He was therefore "armed" with the gun "in the commission" of these offenses. (§ 12022.)

---

[1] All unspecified statutory references are to the Penal Code except as otherwise stated.

Defendant nonetheless claims that, in order to defeat the arming allegation as construed in *Bland, supra*, 10 Cal.4th 991, he was entitled to a sua sponte instruction highlighting defense evidence that he placed the gun in its position near the drugs *for a reason unrelated to the drug crimes*. He is mistaken. The particular reason why he purposefully placed a gun in close proximity to drugs, where it was available for his use in perpetrating his drug offenses, is irrelevant. Defendant's deliberate placement of the weapon negates any claim that the proximity of the gun and the drugs was the result of mere accident or coincidence.

This conclusion is not inconsistent with *Bland*. On the contrary, it fulfills the public safety purpose of the arming enhancement as stated in *Bland*. Regardless of defendant's motive at the time he placed the firearm, its consequent availability during the drug offenses raised the risk that he would resort to its use to facilitate the crimes. That is the very danger the arming statutes seek to deter.

Accordingly, defendant was not entitled to the sua sponte instruction, as he now asserts. We will reverse the Court of Appeal insofar as it found the opposite was true.

FACTS

The record discloses that around midnight on May 23, 2003, officers from the Lake County Narcotics Task Force saw defendant drive his Dodge minivan into the Twin Pines Casino parking lot. The officers knew that methamphetamine sales commonly occurred there. They also knew that defendant had sustained prior drug convictions and was subject to a probation search condition. When defendant exited the van and began walking his dog, the officers detained him. He showed signs of being under the influence of a stimulant. His van was searched.

In an open floorboard area in the middle of the van, between the back of the driver's seat and the front of a rear bench seat, officers found a black garbage bag. The bag contained clothing and a cigarette package. Protruding from the cigarette package was a baggie holding a crystalline substance. The substance was later determined to be 12.09 grams of methamphetamine, or a little less than one-half of an ounce. Through expert testimony, the prosecution established that this quantity represented 120 individual doses of the drug with a retail value of at least $2,000.

Behind the driver's seat, one foot from the bag containing the drugs, officers found a cardboard box. The box contained a .357-caliber Ruger revolver in a zippered pouch. The gun was unloaded, but six rounds of ammunition were tucked into a pocket of the pouch.

The officer who discovered the black garbage bag and the cardboard box testified that the gun was closer to the driver's seat than the drugs, and that the gun was "within arm's reach" of defendant. In opining that defendant likely possessed the drugs for sale, the officer cited such factors as the amount of drugs in the van and the presence of the gun nearby. According to the witness, "persons who possess firearms while in the possession of controlled substances typically possess that firearm to protect the product itself and/or to protect proceeds, which would be the result of selling the product." He opined that it would take 10 to 15 seconds to unzip the pouch, extract the gun and the bullets, and load the chamber. Another expert confirmed the likely drug-related purpose of the gun in the van.

Other prosecution evidence, such as defendant's statements to his probation officer, showed that he kept title to his speedboat and his Harley-Davidson motorcycle in friends' names so they could not be seized by the state. An expert testified that savvy drug dealers followed this practice to reduce the risk of asset forfeiture in the event they were accused of methamphetamine trafficking.

Defendant testified on his own behalf that he was arrested near the start of the Memorial Day weekend while driving to Clear Lake, where one of his parents' homes was located. A painter and handyman, he had finished work a few hours earlier at his sister and brother-in-law's home in the San Francisco Bay Area. Defendant admitted that he bought almost one-half ounce of methamphetamine before leaving the Bay Area. He put most of it in his minivan, but left one gram at his sister's house "to make sure [he would] have some when [he] got back." He used a gram of the drug daily, and had been dependent on it for several years.

Defendant testified that he bought the Ruger pistol from a friend four months earlier, while on probation for prior convictions. The night of his arrest, he took the gun from a work vehicle parked near his sister's house, and placed it in the back of the minivan near the drugs before driving to the lake. He denied using the gun in any drug offense. He also denied planning to sell drugs in Lake County (though he acknowledged having done so in the

past). Defendant intended to consume the drugs while "party[ing]" with friends at the lake.

Defendant, along with his mother and brother, testified that he disliked guns, had been depressed in the year before the crimes, and had expressed suicidal thoughts. Defendant claimed he bought the gun to kill himself. He admitted, however, that he had no plan to commit suicide over the holiday weekend or at any other specific time.[2] A defense investigator opined that the drugs and gun were not possessed for commercial purposes because no measuring or packaging items were found in the van, and because the gun was unloaded.

Outside the presence of the jury, the trial court indicated that it planned to give CALJIC No. 17.15, the standard instruction concerning the section 12022 arming enhancement. Defense counsel did not object. His sole request was that the court state that the firearm must be "readily" available for offensive or defensive use in the charged crime—a change the court declined to make.[3]

During deliberations, the jury sent the court a note seeking the definition of "armed" in section 12022. When the court reread key language from CALJIC No. 17.15, one juror asked about the meaning of "availability" in the instruction. The court replied that such factual questions were solely for the jury to decide.

Defendant was convicted of transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)), a felony. The jury found true a related allegation that defendant was personally armed with a firearm under section 12022,

---

[2] Contrary to what the dissent suggests, there was no evidence that defendant *placed the gun in the van* to commit suicide. (See dis. opn. of Kennard, J., *post*, at p. 242.) Defendant testified that he *bought* the gun *four months earlier* for that purpose, and that he did not intend to use it for anything else, including drug possession. While he described in detail the steps he took to place the gun near the drugs in the van before driving to the lake the night of his arrest, he acknowledged that he had no plans to kill himself at the time.

[3] As read to the jury, CALJIC No. 17.15 stated: "It is alleged in Counts 1, 2, and the violation of Health & Safety Code § 11377(a) which is a lesser crime to Count 2 that in the commission of the felony therein described, a principal was armed with a firearm, namely a .357 Ruger pistol. [¶] If you find a defendant guilty of the crimes thus charged, you must determine whether a principal in that crime was armed with a firearm at the time of the commission or attempted commission of the crimes. [¶] A principal in the commission of a felony is one who either directly and actively commits or attempts to commit the crime or one who aids and abets the commission or attempted commission of the crime. [¶] The term 'armed with a firearm' means *knowingly to carry a firearm or have it available for offensive or defensive use.* [¶] The word 'firearm' includes a pistol, revolver, shotgun, or rifle. [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true." (Italics added; see Judicial Council of Cal., Crim. Jury Instns. (2007–2008) CALCRIM Nos. 3115, 3131.)

subdivision (c) (section 12022(c)). As to the charge of possessing metham-
phetamine for sale (Health & Saf. Code, § 11378), the jury convicted
defendant of the lesser included felony offense of possessing methamphet-
amine. (*Id.*, § 11377, subd. (a).) An arming allegation was sustained as to that
count as well. (§ 12022, subd. (a)(1) (section 12022(a)(1).) The jury found
against defendant on all other charges and allegations set forth in the
information.[4]

At sentencing, the court consolidated this case with three other proceedings
in which defendant was convicted of possessing and transporting controlled
substances, receiving stolen property, and evading a peace officer. He re-
ceived a total combined sentence of about 18 years in prison. It included a
four-year arming enhancement under section 12022(c) for transporting meth-
amphetamine in this case.[5] No additional term was imposed under section
12022(a)(1) for the present finding that defendant was armed while possess-
ing methamphetamine.[6]

The Court of Appeal agreed with defendant that CALJIC No. 17.15 failed
to explain the necessary "nexus or link" between firearm and drug crime
under section 12022 and *Bland, supra,* 10 Cal.4th 991. Such omission, the
court said, barred consideration of the defense theory that the gun was placed
in the van to commit suicide, that its presence near the drugs was thus
coincidental and unrelated to the drug crimes, and that defendant therefore
was not armed in committing any such crime. The Court of Appeal further
determined that the instructional error amounted to a federal constitutional
violation, and was not harmless beyond a reasonable doubt. The judgment

---

[4] Such convictions included one felony count of being a felon in possession of a firearm
(§ 12021, subd. (a)(1)), and two misdemeanor counts of being under the influence of
methamphetamine (Health & Saf. Code, § 11550, subd. (a)) and carrying a concealed firearm
in a vehicle (Pen. Code, § 12025, subd. (a)(1)). In addition, the jury found that defendant
suffered a prior conviction for transporting drugs in 2002. (Health & Saf. Code, §§ 11370.2,
subd. (c), 11379.) The trial court found he was released on bail when the present crimes
occurred. (§ 12022.1.)

[5] Section 12022(c) reads in part now, as it did at the time of defendant's crimes, as follows:
"[A]ny person who is personally armed with a firearm in the commission of a violation . . . of
Section . . . 11379 . . . of the Health and Safety Code, shall be punished by an additional and
consecutive term of imprisonment in the state prison for three, four, or five years."

[6] Section 12022(a)(1) reads in part now, as it did at the time of defendant's crimes, as
follows: "[A]ny person who is armed with a firearm in the commission of a felony . . . shall be
punished by an additional and consecutive term of imprisonment in the state prison for one
year . . . ." Subdivision (a)(2) of section 12022 imposes an additional and consecutive
three-year term where "the firearm is an assault weapon . . . ."

was reversed insofar as defendant was found to have been armed under section 12022(c) while transporting methamphetamine.[7]

The Attorney General asked this court to depublish the Court of Appeal's opinion. We ordered review on our own motion to decide whether any instructional error occurred.

DISCUSSION

The parties dispute the substance of the arming enhancement in section 12022, as set forth in *Bland, supra,* 10 Cal.4th 991. As below, defendant insists a sua sponte instruction was required to allow the jury to find, based on evidence suggesting he placed the gun in the van for a non-drug-related purpose (but see fn. 2, *ante*), that the prosecution failed to prove the gun's presence was not merely accidental or coincidental with respect to the drug crimes. (See *People v. Breverman* (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094] [instruction required on all legal principles closely and openly connected to the case, even in the absence of a defense request].) However, the Attorney General disagrees that, under the statute and *Bland*, evidence of defendant's purpose for placing the gun near the drugs could tend to negate the arming allegation and warrant a special instruction to that effect. The Attorney General holds the correct view.

■  Preliminarily, we observe here, as in *Bland*, that section 12022 is part of The Dangerous Weapons Control Law, which regulates a wide range of unlawful activities involving firearms and other deadly weapons. (§ 12000 et seq.) Unlike section 12022.5, which imposes enhanced penalties for personal *use* of a firearm in the commission of a felony, section 12022 "does not require that a defendant utilize a firearm or even carry one on the body." (*Bland, supra,* 10 Cal.4th 991, 997; see *In re Tameka C.* (2000) 22 Cal.4th 190, 196–198 [91 Cal.Rptr.2d 730, 990 P.2d 603] [describing firearm-use enhancement].) A defendant is armed under section 12022 as long as the gun is "available for use, either offensively or defensively." (*Bland, supra,* 10 Cal.4th at p. 997.) As *Bland* explained, the mere presence and potential for use of a firearm at a crime scene increases the risk of injury and death. The arming provisions in section 12022, like the use provisions in section 12022.5, deter and punish persons who create such dangerous situations in the course of committing crimes.

In *Bland* itself, the defendant sat in a police car outside his house while officers searched inside, investigating the theft of auto parts. The search

---

[7] The Court of Appeal never mentioned the similar arming allegation sustained under section 12022(a)(1) as to defendant's conviction of possessing methamphetamine. The court did not reverse or otherwise disturb this finding in disposing of the case on appeal.

uncovered a large amount of rock cocaine in a plastic baggie in the defendant's bedroom closet. Several unloaded firearms, including an assault weapon, were found under his bed in the same room. A nearby duffel bag contained items commonly used in the sale and manufacture of cocaine base—a gram scale, baggies, and glass containers—some bearing cocaine residue. A photo in the bedroom showed the defendant holding an assault rifle. (See *Bland, supra,* 10 Cal.4th 991, 995.)

A jury convicted the defendant in *Bland* of felony possession of cocaine base for sale. (See Health & Saf. Code, § 11351.5.) The jury also found that he was armed with an assault weapon in committing the crime under section 12022, subdivision (a)(2), triggering an additional three years in prison. To assist the jury in making the latter determination, the trial court read a slightly modified version of CALJIC No. 17.15. (See *Bland, supra,* 10 Cal.4th 991, 995–996, 1005.)

The Court of Appeal in *Bland* found insufficient evidence to support the section 12022 finding, and struck the three-year enhancement. Based on the relevant statute and instructions, the court concluded that the defendant was not armed with the assault rifle because it was not "available" for his use in protecting either himself or the cocaine he planned to sell. (*Bland, supra,* 10 Cal.4th 991, 996.) The reason cited by the court was the defendant's presence outside the house when police found the drugs and guns together in his bedroom. None of the guns, including the assault weapon, posed any danger under these circumstances, in the Court of Appeal's view.

■ This court rejected such reasoning on review, and effectively reinstated the section 12022 enhancement. *Bland* started from the premise that drug possession is a continuing offense that extends through the entire time that the defendant asserts dominion and control over illegal drugs. Thus, Bland's liability for the underlying felony, and his commission of the offense for purposes of section 12022, were not determined solely by whether he was present when police discovered the firearm and drugs in close proximity to one another. Rather, section 12022's application depended on whether the defendant had the gun available for use in furthering the drug offense "at any time during his possession of the drugs." (*Bland, supra,* 10 Cal.4th 991, 1000.)

On this issue, which the Court of Appeal had overlooked, *Bland* noted that the defendant kept his cache of guns, including the assault weapon, in his bedroom near the cocaine. From this evidence, the jury could infer that at some point during the felonious drug possession, he was physically present with both the drugs and the guns. *Bland* equated such proximity with the requisite availability for use of the assault weapon in the drug crime. (See *Bland, supra,* 10 Cal.4th 991, 1000.)

■ *Bland* summarized these principles as follows: "[W]hen the prosecution has proved a charge of felony drug possession, and the evidence at trial shows that a firearm was found in close proximity to the illegal drugs in a place frequented by the defendant, a jury may reasonably infer (1) that the defendant knew of the firearm's presence, (2) that its presence together with the drugs was not accidental or coincidental, and (3) that, at some point during the period of illegal drug possession, the defendant was present with both the drugs and the firearm and thus that the firearm was available for the defendant to put to immediate use to aid in the drug possession. These reasonable inferences, if not refuted by defense evidence, are sufficient to warrant a determination that the defendant was 'armed with a firearm in the commission' of a felony within the meaning of section 12022." (*Bland, supra,* 10 Cal.4th 991, 1002–1003.)

*Bland* observed that this construction of section 12022 furthered the purpose of the penalty enhancements contained therein. We explained that, in drug cases, the crime scene is the place where the defendant keeps his stash of drugs, and that a firearm stored nearby creates an enhanced risk of harm. (*Bland, supra,* 10 Cal.4th 991, 1001–1002.) *Bland* emphasized that "[d]rug dealers are known to keep guns to protect not only themselves, but also their drugs and drug proceeds; ready access to a gun is often crucial to a drug dealer's commercial success." (*Id.* at p. 1005.) We declined to hold that a defendant who created such access by his knowing placement and design was not armed simply because he was not present continuously during an extended period of drug possession. Such an approach would reward drug traffickers and defeat the public safety purpose behind the statute, according to *Bland.* (*Id.* at p. 1002.)

Applying the foregoing principles here, this was a classic case for finding that defendant was armed while possessing and transporting a controlled substance. According to the evidence on both sides, defendant's Ruger pistol and his 12 grams of methamphetamine sat almost side by side inside his minivan as he drove to the lake and stopped at the casino. By his own admission, such close proximity did not occur through ignorance or happenstance. Rather, defendant placed the gun and drugs there together, on purpose, while preparing for a long holiday weekend. Prosecution evidence indicated that he could reach both the gun and the bullets from the driver's seat, and that the gun could be loaded quickly. Thus, a rational jury could have concluded beyond a reasonable doubt that the gun was available "to protect the defendant during a drug sale, to guard against theft of the drugs, or to ward off police." (*Bland, supra,* 10 Cal.4th 991, 1002.)

Defendant does not seriously dispute that he knowingly placed the gun in the van and that it was available for his use in committing the drug crimes of

which he was convicted. He claims, however, that under *Bland*, he was entitled to refute any further inference that the presence of the gun near the drugs "was not accidental or coincidental." (*Bland, supra,* 10 Cal.4th 991, 1003.) Specifically, he urges, the court should have given, sua sponte, an instruction allowing the jury to find from defense evidence and argument that there was no "facilitative nexus" between the gun and the drugs, because he possessed the gun for a reason unrelated to the drug crimes—suicide. The Attorney General responds that if *Bland* can be read to support defendant's view, it is wrong under section 12022 and should be overruled to that extent.

Neither approach is correct. We disagree that instructional error occurred. We also decline to overrule *Bland*.

The "facilitative nexus" debate between the parties stems from a single passage in *Bland, supra,* 10 Cal.4th 991, 1002. There, the *Bland* court found support in its construction and application of section 12022 by consulting a firearm enhancement under federal law. The federal statute enhanced the punishment of any person who "uses or carries" a firearm "during and in relation to" drug trafficking. (18 U.S.C. § 924(c)(1)(A).)[8] Citing one intermediate federal appellate decision, *Bland* noted that the federal statute required a " 'facilitative nexus' " between the drugs and the gun. (*Bland, supra,* 10 Cal.4th at p. 1002, citing *U.S. v. Paulino* (1st Cir. 1994) 13 F.3d 20, 26.) Next, *Bland* quoted from *Smith v. United States* (1993) 508 U.S. 223, 238 [124 L.Ed.2d 138, 113 S.Ct. 2050], concerning the same federal law: " '[T]he firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement *cannot be the result of accident or coincidence.*' " (*Bland, supra,* 10 Cal.4th at p. 1002, original italics.)

Thus, as defendant suggests, *Bland* appears to have adopted a "facilitative nexus" test and embraced a "purpose and effect" standard. However, such principles are not at odds with anything we have said today about section 12022 and *Bland, supra,* 10 Cal.4th 991. Nor does the discussion of federal law in *Bland* compel us to accept the state law claim of instructional error presented here.

■ *Bland* made clear that it did not impose an "intent requirement" under section 12022, or provide that the purpose with which the gun was placed

---

[8] After *Bland, supra,* 10 Cal.4th 991, the United States Supreme Court held in *Bailey v. United States* (1995) 516 U.S. 137 [133 L.Ed.2d 472, 116 S.Ct. 501], that firearm use under the federal statute required "active employment" of the weapon (*id.* at p. 144), and that this definition excluded mere possession of a firearm (i.e., in the trunk of a vehicle) while transporting drugs (i.e., in the vehicle's passenger compartment). Congress subsequently amended the statute to cover any defendant who, "in furtherance of" the crime of drug trafficking, "possesses a firearm." (18 U.S.C. § 924(c)(1)(A), as amended by Pub.L. No. 105-386, § 1(a) (Nov. 13, 1998) 112 Stat. 3469; see *Watson v. U.S.* (2007) 552 U.S. 74, ___ & fn. 3 [169 L.Ed.2d 472, 128 S.Ct. 579, 581–582 & fn. 3].)

near the drugs negates the "facilitative nexus" that arming requires. (*Bland, supra,* 10 Cal.4th 991, 1003, fn. 5.) We adhere to this view. When (1) a defendant, while perpetrating a drug offense, knows of the presence and location of a firearm near the drugs, (2) the proximity of the gun to the drugs is not the result of mere accident or happenstance, and (3) the defendant is in a position to use the gun offensively or defensively to aid in the commission of the offense, the gun facilitates that crime and has the requisite purpose or effect with respect to its commission.

█ Here, defendant knew of the handgun's presence and location because, as he conceded, he himself had placed the weapon there. By his own testimony, he also knew of the nearby presence and location of the methamphetamine, and its proximity to the gun. Nor was this proximity "accidental or coincidental," for, as already noted, defendant had consciously put the drugs and the gun in those positions. Without doubt, the weapon was readily at hand should he choose to use it to facilitate his perpetration of the drug crimes. The effect of such action is to make the firearm available for use in the possession and transportation of drugs.

Under these circumstances, defendant was "armed" with the gun in the commission of these offenses under section 12022. It does not matter whether, at the particular moment he knowingly placed the gun where it was available for such criminal use, he did so for reasons unrelated to drug possession or trafficking. Regardless of his original motive, the opportunity and incentive to later resort to using the gun in perpetrating the crime is the same. And his deliberate placement of the gun and drugs in juxtaposition to each other negates any claim of accident or coincidence under *Bland, supra,* 10 Cal.4th 991.

The Court of Appeal therefore erred in determining the trial court violated a sua sponte duty to instruct, beyond the provisions of CALJIC No. 17.15, that there must be a facilitative nexus between the possession of illegal drugs and a firearm, or that, if defendant's testimony was credited, the proximity of the gun to the drugs was accidental and coincidental and had no purpose or effect as to the drug offenses. The jury was adequately apprised of the requirements for finding that defendant was "armed with a firearm in the commission of" the charged crimes under section 12022, subdivisions (a)(1) and (c). As noted, such requirements were met here.

CONCLUSION

The judgment of the Court of Appeal is reversed insofar as that court vacated the finding and enhancement under section 12022(c). In all other respects, the judgment is affirmed.

George, C. J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**KENNARD, J., Dissenting.**—Penal Code section 12022 is a sentence enhancement provision, which states in subdivision (a)(1): "[A]ny person who is *armed with a firearm in the commission of a felony or attempted felony* shall be punished by an additional and consecutive term of imprisonment . . . ."[1] (Italics added.) In *People v. Bland* (1995) 10 Cal.4th 991 [43 Cal.Rptr.2d 77, 898 P.2d 391] (*Bland*), this court construed the italicized statutory phrase this way: The arming must occur "during the commission of the underlying felony" (*id.* at p. 1001) and there must be some "nexus or link" between the firearm and that crime (*id.* at p. 1002).

In this case, police found methamphetamine and a firearm in defendant's van. The prosecution charged him with the felonies of possessing and transporting the drug, and it alleged an arming enhancement with respect to both crimes. Defendant denied any relationship between the methamphetamine and the firearm, claiming he had the latter because he was contemplating suicide. The trial court failed to instruct on *Bland*'s requirement there that be a nexus or link between the firearm and the underlying drug crime. Therefore, in finding the arming enhancement allegations to be true, the jury was precluded from considering the defense argument that the gun had no connection to the methamphetamine.

Contrary to the Court of Appeal, which set aside the enhancements, the majority here upholds the trial court's failure to instruct, on its own initiative, on the nexus or link aspect of the *Bland* test. I disagree. The Court of Appeal got it right, and I would affirm the judgment of that court.

## I

As relevant here, defendant was charged with the felonies of possessing methamphetamine for sale (Health & Saf. Code, § 11378) and transporting it (*id.*, § 11379, subd. (a)), and it was alleged that "in the commission" of those offenses defendant was personally "armed with a firearm" (Pen. Code, § 12022, subd. (c)).[2]

At trial, the prosecution presented this evidence: Northern California's Lake County has a Narcotics Task Force consisting of law enforcement

---

[1] Further undesignated statutory references are to the Penal Code.

[2] Section 12022, subdivision (c) provides for additional terms of imprisonment of three, four, or five years for certain, specified drug-related felonies. The increased prison term under section 12022, subdivision (a)(1), the basic arming enhancement provision, is one year.

officers from various agencies, including the Lake County Sheriff's Department and the City of Clearlake Police Department. In the early morning hours of May 23, 2003, task force members saw defendant drive a van into the parking lot of the Twin Pines Casino, located in Middletown, Lake County. The casino parking lot was known to task force members as a "hot spot" for methamphetamine dealing. When defendant got out of his van with a dog on a leash, task force members stopped him and, knowing him to be on probation and thus subject to warrantless search, they entered the van. On the floor in the back of the van was a plastic garbage bag filled with clothing and other personal items. Protruding from a cigarette package in the garbage bag was a clear plastic baggie containing a substance later determined to be 12.09 grams of crystal methamphetamine. About a foot away from the garbage bag, behind the driver's seat, was a cardboard box containing, among other things, a zippered pouch. Inside the pouch was an unloaded .357 Ruger revolver; in a separate compartment of the pouch were six rounds of ammunition.

The defense presented this evidence: Defendant was on his way from Contra Costa County to his family's Lake County vacation house, where he planned to spend the May 2003 Memorial Day weekend, when he stopped at the casino parking lot so his dog could relieve itself. To counter the prosecution's drug charges, defendant, his brother, and his mother testified to defendant's longtime methamphetamine addiction, explaining that he possessed the 12.09 grams of methamphetamine in the plastic baggie not for the purpose of sale but for his personal use.

And to counter the prosecution's theory that defendant was armed with a firearm "in the commission" of the two drug felonies, the defense presented testimony from defendant's brother and mother that defendant disliked firearms, that he had recently been depressed, and that he talked about killing himself. Defendant testified that he had considered committing suicide, but that he had no immediate plan to do so when he drove into the casino parking lot where task force members encountered him. He explained that the revolver and six rounds of ammunition found in his van were for this purpose.

The trial court's instruction to the jury on section 12022's arming enhancement was based on the standard jury instruction, CALJIC No. 17.15.[3] In closing argument, the prosecutor drew the jury's attention to that instruction.

---

[3] The jury instruction read: "It is alleged in Counts 1, 2, and the violation of Health & Safety Code § 11377(a) which is a lesser crime to Count 2 that in the commission of the felony therein described, a principal was armed with a firearm, namely a .357 Ruger pistol. [¶] If you find a defendant guilty of the crimes thus charged, you must determine whether a principal in that crime was armed with a firearm *at the time* of the commission or attempted commission of the crimes. [¶] A principal in the commission of a felony is one who either directly and actively commits or attempts to commit the crime or one who aids and abets the commission

Under that instruction, the prosecutor said, defendant's reason for having the gun was not an issue, and the jury need only decide whether the gun was "available for [defendant] to use if he chose to do so."

During deliberations, the jury sent a note to the trial court asking for the "[d]efinition of Penal Code section 12022 with the [*sic*] regards to the term 'armed.' " When the trial court called the jury back into the courtroom to respond to the question, one juror said: "I think the question was availability, what constitutes availability?" The court replied: "That would be a question for you to decide. It's a question of fact as to whether or not this shows that firearm was available for offensive or defensive use. That would be within your purview alone, so I couldn't answer that question for you."

The jury acquitted defendant of the charge of possessing methamphetamine for sale, but it convicted him of the lesser included felony offense of unauthorized possession of methamphetamine (Health & Saf. Code, § 11377), and it also convicted him of transporting methamphetamine. With respect to both felonies, the jury found that defendant was "armed with a firearm in the commission" of the offense.[4] The trial court sentenced defendant to a state prison term that included four years for the section 12022 arming enhancements. Defendant appealed.

Relying on *Bland, supra*, 10 Cal.4th 991, the Court of Appeal concluded that the trial court's instruction on the section 12022 arming enhancement was defective in omitting the requirement of a nexus or link between the firearm found in the van and defendant's illegal possession and transportation of the methamphetamine. Determining the omission to be prejudicial to defendant, the Court of Appeal struck the jury's findings on the enhancements. The Attorney General asked this court to depublish the Court of Appeal's decision. We granted review on our own initiative.

## II

Central to defendant's claim of instructional error is this court's 1995 decision in *Bland, supra*, 10 Cal.4th 991, which is summarized below.

---

or attempted commission of the crime. [¶] The term 'armed with a firearm' means knowingly to carry a firearm or have it available for offensive or defensive use. [¶] The word 'firearm' includes a pistol, revolver, shotgun, or rifle. [¶] The People have the burden of proving the truth of this allegation. If you have a reasonable doubt that it is true, you must find it to be not true." (Italics added.)

[4] With respect to the conviction for possessing methamphetamine under Health and Safety Code section 11377, the arming enhancement was governed by Penal Code section 12022, subdivision (a)(1) (setting out a one-year enhancement) and not its subdivision (c) (setting out additional terms of imprisonment of three, four, or five years for arming in the commission of specified drug offenses), because simple possession is not one of the offenses covered by section 12022, subdivision (c).

In *Bland*, the defendant was in a police car outside his house when police searched the house and found in the defendant's bedroom closet 17.95 grams of rock cocaine; nearby was a duffel bag containing a gram scale, plastic baggies, and other items typically associated with the manufacture and sale of cocaine base. Also in the bedroom were several unloaded firearms, including a Colt AR-15 semiautomatic assault rifle and a photograph of the defendant with the assault rifle. (*Bland, supra,* 10 Cal.4th at p. 995.)

The jury in *Bland* found the defendant guilty of two felony counts of possession of cocaine base for sale (Health & Saf. Code, § 11351.5), and as to one of those counts found that he was armed with an assault weapon in the commission of that offense (Pen. Code, § 12022, subd. (a)(2)). The Court of Appeal set aside the section 12022 arming enhancement for insufficient evidence. It reasoned that the defendant could not have been armed with the assault weapon in committing the felony at issue because the unloaded assault rifle retrieved by the officers was not accessible to the defendant, who was outside the house during the police search. This court disagreed. It reasoned that evidence of the defendant's possession of drugs and drug paraphernalia near the assault rifle was sufficient to establish that he was armed in the commission of the felony drug possession, within the meaning of section 12022. (*Bland, supra,* 10 Cal.4th at pp. 995–997.)

In construing section 12022's phrase, "armed with a firearm," *Bland* explained that a defendant need not "utilize a firearm or even carry one on the body." (*Bland, supra,* 10 Cal.4th at p. 997.) Rather, "[a] defendant is *armed* if the defendant has the specified weapon available for use, either offensively or defensively." (*Ibid.*)

Next, *Bland* discussed the nature of drug possession, describing it as a " 'continuing' offense," that is, one that "extends through time." (*Bland, supra,* 10 Cal.4th at p. 999.) "Thus, throughout the entire time the defendant asserts dominion and control over illegal drugs, the defendant is criminally liable for the drug possession." (*Ibid.*)

*Bland* held that, for purposes of section 12022's arming enhancement, a defendant could be armed in the commission of a possessory drug offense even though not near the firearm and the drugs when arrested. The important circumstance, *Bland* said, was whether the defendant "had the firearm available for use *in furtherance of the drug offense* at any time during his possession of the drugs." (*Bland, supra,* 10 Cal.4th at p. 1000, italics added.)

Of particular relevance here is this observation in *Bland*: "Of course, contemporaneous possession of illegal drugs and a firearm will satisfy the statutory requirement of being 'armed with a firearm in the commission' of

felony drug possession only if the evidence shows a *nexus or link* between the firearm and the drugs. The federal courts, in interpreting the federal counterpart to California's weapons enhancement law (18 U.S.C. § 924(c)(1)), have described this link as a 'facilitative nexus' between the drugs and the gun. (See *United States* v. *Paulino* (1st Cir. 1994) 13 F.3d 20, 26.) Under federal law, which imposes specified prison terms for using or carrying a firearm ' "during and in relation to" ' a crime of drug trafficking, 'the firearm must have *some purpose or effect* with respect to the drug trafficking crime; its presence or involvement *cannot be the result of accident or coincidence.*' (*Smith* v. *United States* (1993) 508 U.S. 223, 238 [124 L.Ed.2d 138, 113 S.Ct. 2050], italics added.)" (*Bland, supra,* 10 Cal.4th at p. 1002, first and second italics added.)

Section 12022's arming enhancement, *Bland* observed, "implicitly requires" a similar " 'facilitative nexus' " in light of the statute's requirement that the arming occur "in the commission" of the charged felony. (*Bland, supra,* 10 Cal.4th at p. 1002.) Thus, the arming under section 12022 must occur "during the commission of the underlying felony" (*Bland, supra,* at p. 1001) and it must have "some *'facilitative nexus'* to that offense" (*id.* at p. 1002). *Bland* went on to hold: "[From evidence] that a firearm was found in close proximity to . . . illegal drugs in a place frequented by the defendant, a jury may reasonably infer (1) that the defendant knew of the firearm's presence, (2) that its presence together with the drugs was not accidental or coincidental, and (3) that, at some point during the period of illegal drug possession, the defendant was present with both the drugs and the firearm and thus that the firearm was available for the defendant to put to immediate use to aid in the drug possession." (*Id.* at pp. 1002–1003.) *Bland* cautioned, however, that these reasonable inferences could support a jury determination that the defendant was armed with a firearm "in the commission" of the charged felony so long as the inferences were *"not refuted by defense evidence."* (*Id.* at p. 1003, italics added.)

Relying on this statement in *Bland,* the Court of Appeal here set aside the jury's findings on the section 12022 arming enhancements. The court pointed to the defense evidence that defendant had the gun in his van not to aid in the felonies of possessing and transporting methamphetamine but because he was contemplating suicide. In light of that evidence, the Court of Appeal concluded, the trial court had a sua sponte obligation to instruct the jury that for defendant to be armed with a firearm in the commission of a felony, there had to be some "facilitative nexus" between the firearm and the felony. I agree. Below, I explain why.

## III

Section 12022's subdivision (a)(1) states: "[A]ny person who is *armed with a firearm in the commission of a felony or attempted felony* shall be punished by an additional and consecutive term of imprisonment . . . ." (Italics added.) As discussed in part II, *ante*, this court's decision in *Bland* construed the phrase "armed . . . in the commission" of a felony offense as meaning that the arming must occur "during the commission of the underlying felony" (*Bland, supra,* 10 Cal.4th at p. 1001) and must have some link or nexus to that offense (*id.* at p. 1002). A jury may reasonably infer from a firearm's close proximity to illegal drugs that the firearm's "presence together with the drugs was not accidental or coincidental." (*Bland, supra,* at p. 1003.) But this inference can be "refuted by defense evidence" to the contrary. (*Ibid.*) That is what occurred in this case.

Defendant presented evidence that he had the .357 Ruger revolver in his van because he had been contemplating suicide, which supported the theory that the gun's presence was unrelated to his possession and transportation of methamphetamine. The trial court's instruction to the jury, however, precluded consideration of this theory.

In the language of CALJIC No. 17.15, the trial court instructed the jury that if it found defendant guilty of either one of the two felonies, it must then decide whether defendant "was armed with a firearm *at the time* of the commission or attempted commission" of that felony. (CALJIC No. 17.15, italics added; see p. 242, fn. 3, *ante*.) Thus, this instruction properly included the temporal requirement set forth in *Bland, supra,* 10 Cal.4th 991, that the arming must take place *during* the underlying felony. But the jury was not instructed on *Bland*'s additional requirement that to be armed in the commission of a felony, the arming must have some *link or nexus* to that felony. A trial court must, on its own initiative, instruct the jury on those general legal principles that are relevant to the defense theory of the case and supported by the evidence. (*People v. San Nicolas* (2004) 34 Cal.4th 614, 669 [21 Cal.Rptr.3d 612, 101 P.3d 509]; *People v. Breverman* (1998) 19 Cal.4th 142, 157 [77 Cal.Rptr.2d 870, 960 P.2d 1094].)

In giving the jury an incomplete description of the "in the commission" element of section 12022's arming enhancement, the trial court erred. This instructional error is harmless only if beyond a reasonable doubt it did not affect the jury's verdict. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 324–326 [109 Cal.Rptr.2d 851, 27 P.3d 739]; see also *Neder v. United States* (1999) 527 U.S. 1, 10 [144 L.Ed.2d 35, 119 S.Ct. 1827] [with both "misdescriptions and omissions—the erroneous instruction precludes the jury from making a finding on the *actual* element"]; *California v. Roy* (1996) 519 U.S. 2, 5 [136 L.Ed.2d 266, 117 S.Ct. 337].)

Here, the instructional error precluded the jury from considering defendant's claim that the gun's presence in the van had no connection to the nearby methamphetamine that was concealed in a cigarette package inside a plastic garbage bag together with defendant's clothing and other personal items. Whether a majority of this court disbelieves the defense evidence that defendant had the gun to commit suicide is beside the point. It was for the jury, as the trier of fact, to consider that defense evidence, and to either accept or reject it.

Compounding the instructional error was the prosecutor's erroneous comment in closing argument to the jury that defendant's reason for having the gun in the van was irrelevant; the pertinent issue for the jury, the prosecutor said, was whether the gun was "available" to defendant. The jury's apparent confusion on this very point is evident from its inquiry of the trial court on the meanings of the terms "armed" and "availability" for purposes of the section 12022 arming enhancement. The trial court provided no answers. (See dis. opn., *ante*, at pp. 242–243.)

Under these circumstances, I cannot conclude that beyond a reasonable doubt the instructional error had no effect on the jury's verdict, and I would affirm the Court of Appeal in setting aside the arming enhancement.

## IV

The majority insists that in this case there was no need to instruct the jury on the necessity of finding a link or nexus between the gun and the nearby drugs in defendant's van. It reasons that defendant did not sufficiently refute the inference of arming arising from the prosecution's case because he admitted knowing that the pistol was in the van near the methamphetamine when he testified to deliberately placing the gun and the drugs in his van. (Maj. opn., *ante*, at p. 238.) According to the majority, the "close proximity [of the drugs and the gun] did not occur through ignorance or happenstance." (*Ibid.*)

I disagree with the majority that a defendant who *knows* that a firearm is near illegal drugs in his possession can never refute an inference of being armed within the meaning of section 12022. The majority acknowledges that this court's decision in *Bland* established a purpose and effect test. (Maj. opn., *ante*, at p. 239.) As *Bland* put it, " 'the firearm must have *some purpose or effect* with respect to the drug trafficking crime; its presence or involvement *cannot be the result of accident or coincidence.*' " (*Bland, supra*, 10 Cal.4th at p. 1002, first italics added.) As the majority sees it, a firearm found near illegal drugs *always* meets the *Bland* test so long as the defendant knows of the gun's presence and can retrieve it to further any unlawful purposes in connection with the drugs. I do not share that view.

When a defendant has knowingly placed a firearm nearby illegal drugs, the gun's mere presence cannot, under *Bland, supra,* 10 Cal.4th 991, be considered an " 'accident.' " (*Id.* at p. 1002, italics omitted.) But the location of the gun near the drugs may well be a " 'coincidence.' " (*Ibid.*, italics omitted.) As discussed earlier, that was the essence of the defense here. The jury, as trier of fact, may not have accepted that defense, but defendant was entitled to have the jury at least consider it. The jury was precluded from doing so, however, because of the trial court's failure to instruct on the necessity of finding a link or nexus between the gun and the underlying felonies of possessing and transporting methamphetamine.

I would affirm the Court of Appeal.