Filed 11/25/20  P. v. Rios CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D076589 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE388454) |
| FRANK C. RIOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Evan P. Kirvin, Judge.  Affirmed in part; reversed in part; remanded with directions.

Bruce L. Kotler, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Frank C. Rios with possession of a controlled substance while armed with a loaded firearm (Health and Saf. Code,

§ 11370.1, subd. (a); count 1); felon in possession of a firearm (Pen. Code,[1] § 29800, subd. (a)(1); count 2); and felon in possession of ammunition (§ 30305, subd. (a)(1); count 3). Rios admitted to four prison priors. The court sentenced Rios to prison for eight years.

Rios appeals, contending substantial evidence does not support his conviction under each offense. In addition, he asserts that his conviction for count 3, felon in possession of ammunition, should have been stayed under section 654 because it involved possession of ammunition that was found loaded in the handgun, the possession of which was charged in counts 1 and 2. In addition, Rios asserts that his four one-year prison prior terms should be stricken because Senate Bill No. 136 (2019-2020 Reg. Sess.) amended section 667.5, subdivision (b), to limit punishment to sexually violent offenses, and that the amendment applies retroactively to him.

While this appeal was pending, we granted Rios's motion to file a supplemental brief. In that brief, Rios claims that the trial court erred by refusing to instruct the jury on simple possession of methamphetamine, arguing simple possession is a lesser included offense of count 1, Health and Safety Code section 11370.1, possession of a firearm by possessor of a controlled substance.

The People filed a supplemental brief, agreeing that simple possession of methamphetamine was a lesser included offense of count 1 based on the accusatory pleading test. However, they contend the court did not err in failing to give the instruction because substantial evidence did not support the simple possession instruction, and there was no evidence that the offense was less than charged. Further, the People claim even if we determine the instruction should have been given to the jury, any error was harmless.

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

2

We conclude substantial evidence supports Rios's convictions. Also, even if the trial court erred by failing to provide an instruction for simple possession, that error was harmless. However, as the People concede, both of Rios's sentencing claims are well taken. We agree with the parties that the court should have stayed Rios's term imposed under count 3 and Senate Bill No. 136 (2019-2020 Reg. Sess.) applies retroactively, thus Rios's four one-year prison priors must be stricken. We thus reverse the judgment on this limited ground and remand the matter to the superior court to amend the abstract of judgment accordingly. In all other respects, the judgment is affirmed.

FACTUAL BACKGROUND

On February 15, 2019, San Diego County Sheriff's Deputies Lucas Parrott and Matthew Andrade were patrolling a residential area of Spring Valley around 2:15 p.m. when Parrott noticed at least two individuals standing in front of a residence on Felicita Avenue. While Andrade was talking to a woman who was walking her dog, Parrott noticed two individuals standing outside the residence run.

Then, after speaking with a resident of the home the individuals were in front of, Andrade and Parrott drove northbound up Felicita Avenue to the end of the block, turned the corner, and ultimately ended up on Concepcion Avenue, a street directly next to and parallel to Felicita Avenue.

Once on Concepcion Avenue, the deputies saw Rios walking and asked him to "come here."[2] Rios approached the deputies after a slight delay, during which time, the deputies lost sight of Rios for several seconds as Rios walked behind a car parked between him and the deputies. Rios walked back from behind the vehicle only after Parrott caught Rios's attention by calling

---

[2] Andrade testified that about a minute had passed since he had seen the two individuals run away from the group and when the deputies saw Rios.

out to him again. After Rios approached the deputies, they noticed that Rios was sweaty and that fresh mud covered his body, pants, and other clothing. Rios also appeared nervous and out of breath, like he had just been running. He was wearing a black long-sleeve T-shirt, blue jeans, and a baseball hat. At the time of the incident, Rios was a convicted felon. During the deputies' contact with Rios, a witness approached and spoke with the deputies. The deputies then detained Rios.

Shortly after detaining Rios and beginning their investigation, the deputies discovered a bag of methamphetamine on the ground behind the parked car where the deputies had seen Rios walking moments earlier. The baggie was no more than 10 feet from where the deputies detained Rios. After receiving additional information from another witness, the deputies began to investigate for weapons in the area. The deputies began their search by retracing the likely path Rios had taken. During their search, both the deputies came across an open, blue recycling bin located approximately 30 to 40 feet up the street from where the deputies detained Rios. Information obtained by one of the witnesses prompted both the deputies to look inside the recycling bin. When Andrade looked inside of the blue recycling bin and removed a white box, he found an operable, black SCCY 9-millimeter handgun hidden underneath. The gun had fresh mud on it and was located towards the bottom of the bin. The handgun contained live rounds of ammunition in the magazine.

Douglas D., a witness who lives on Concepcion Avenue, testified that he was working in his garage around the same time that day when he heard a loud noise in his backyard. He looked through his back door and saw Rios crouched down by the rear fence in his backyard, a fence that backed up to a residence on Felicita Avenue. The ground underneath where Rios had landed

was muddy and covered in leaves. When Douglas walked into his backyard, Rios ran along the fence line, climbed over the fence at the front of Douglas's property, and exited the property, headed northbound on Concepcion Avenue. At trial, Douglas positively identified Rios as the individual he saw in his backyard and testified that Rios was wearing dark clothing and a ball cap at that time.

At around the same time that Douglas saw Rios in his backyard, another witness, Stephan H., who also lived on Concepcion Avenue, looked out his bedroom window that looks out across the street. Stephan saw an individual walk down Concepcion, stop by a sewer drain, and stare into it for several seconds. As the individual walked out of his view, Stephan went outside and looked around the corner to see the same individual briefly standing by a blue recycling bin and trash can approximately 30 yards away. The trashcan and recycling bin were located right across the street from Stephan's house. About ten minutes later, Stephan saw the deputies cruising and then walking up and down Concepcion. He approached the deputies to offer information about the individual. Stephan did not see anyone else near the blue recycling bin between seeing the individual and the deputies.

At trial, Stephan could not positively identify Rios as the individual he saw but testified that the individual was "between five-eight and five-nine" wearing a ball cap and T-shirt. Stephan testified that he believed the shirt the individual was wearing was white and looked clean.

The parties stipulated that at the time of the incident, Rios was a convicted felon. They further stipulated that the 9-millimeter handgun was tested and found to be operable. Criminalists were unable to match Rios's DNA to the handgun, nor could they develop fingerprints from the gun or

5

ammunition.  The baggie found near where Rios was arrested contained 1.38 grams of methamphetamine.

DISCUSSION

I

SUBSTANTIAL EVIDENCE

A.  Rios's Contentions

Rios asserts the evidence was insufficient to support his conviction for possession of a controlled substance while armed with a loaded firearm, felon in possession of a firearm, and felon in possession of ammunition.  We disagree.

B.  Standard of Review and Applicable Law

In evaluating Rios's contention, we apply a substantial evidence standard of review to assess the sufficiency of the evidence.  We review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Steele* (2002) 27 Cal.4th 1230, 1249 (*Steele*).)  This standard of review is the same for cases in which the People rely mainly on circumstantial evidence. (*People v. Williams* (2009) 170 Cal.App.4th 587, 623.)  We presume in support of the judgment the existence of every fact that could reasonably be deduced from the evidence.  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  We ask whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the allegations to be true beyond a reasonable doubt.  (See *Jackson v. Virginia* (1979) 443 U.S. 307, 319.) A reversal for insufficient evidence " ' "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial

6

evidence to support' " the jury's verdict. [Citation.]' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

"[E]very person who unlawfully possesses any amount of . . . a substance containing methamphetamine . . . while armed with a loaded, operable firearm" is guilty of a felony. (Health & Saf. Code, § 11370.1, subd. (a).) " '[A]rmed with' means having available for immediate offensive or defense use." (*Ibid*.)

"This definition is consistent with the well-established construction of 'armed' given to firearm enhancements . . . [citation]. [Citations.] In order to be 'armed' within the meaning of these statutes, a defendant need not physically carry the firearm on his or her person." (*People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979, 989-990.) Rather, if the firearm was found in close proximity to drugs in a place frequented by the defendant, a jury may reasonably infer from these facts " '(1) that the defendant knew of the firearm's presence, (2) that its presence together with the drugs was not accidental or coincidental, and (3) that, at some point during the period of illegal drug possession, the defendant was present with both the drugs and the firearm and thus that the firearm was available for the defendant to put to immediate use to aid in the drug possession.' " (*People v. Pitto* (2008) 43 Cal.4th 228, 238, citing *People v. Bland* (1995) 10 Cal.4th 991, 1002-1003.) If not refuted, these inferences are sufficient to support a determination the defendant was " 'armed with' " a firearm. (*Pitto*, at p. 238; *Bland*, at p. 1003.)

## C. Analysis

In this case, the evidence presented to the jury was sufficient to sustain Rios's conviction of possession of a controlled substance while armed with a loaded firearm, felon in possession of a firearm, and felon in possession of

ammunition.  Here, the jury reasonably could conclude Rios possessed the baggie of methamphetamine while armed with a loaded firearm.

Moments after arriving at Felicita Avenue, the deputies saw two individuals run.  Within minutes of seeing the individuals run, the deputies saw Rios walking on Concepcion Avenue, the street directly next to Felicita Avenue.  When the deputies contacted Rios, Rios appeared nervous and out of breath, like he had just been running.

Furthermore, there was a moment in time, between when the deputies first approached Rios on Concepcion Avenue and when Rios finally walked toward the deputies, that the deputies lost sight of Rios because he walked behind a parked car.  Minutes later, the deputies discovered a baggie of methamphetamine on the ground next to that very same parked car, no more than 10 feet away from where Rios was detained.

Rios points out that the baggie of methamphetamine found under the vehicle was not covered in mud, while his hands, fingernails, and clothes, were covered in mud.  This point suggests that one could reasonably conclude that the baggie of methamphetamine did not belong to Rios.  However, this potential discrepancy merely goes to the weight of the evidence, as a jury could also reasonably conclude that a man, although covered in mud, can keep a small plastic baggie free of mud by means such as concealing it within his pocket.  When the jury is presented with circumstantial evidence they must decide "which reasonable inference or inferences, if any, to draw from the evidence," and here it is clear the jury decided on the inference that Rios was in possession of the baggie of methamphetamine.  (*People v. Livingston* (2012) 53 Cal.4th 1145, 1166.)

Within the 30 minutes following Rios's detainment and the discovery of the baggie of methamphetamine, the deputies found an operable, black SCCY

8

9-millimeter handgun, containing live rounds of ammunition, hidden inside of an open blue recycling bin left on Concepcion Avenue. This recycling bin was located about 30 to 40 feet away from where Rios was ultimately detained. There was fresh mud on both Rios and the gun.

There were two witnesses who live on Concepcion Avenue that testified at Rios's trial. One witness, Douglas D., testified that at around the same time of the events above, he had seen Rios crouched in a muddy spot by a fence at the rear of his property, property that backed up to a residence on Felicita Avenue. Douglas testified that he saw Rios exit his property and head northbound on Concepcion Avenue.

The other witness, Stephan H., testified that at around the same time as these events, an individual walking down Concepcion Avenue caught his attention when the individual stopped by a sewer drain and stared into it for several seconds. Seconds later, Stephan observed that same individual standing by a blue recycling bin and trash can. Stephan testified he did not see anyone else near the blue recycling bin between seeing the individual and seeing the deputies.

Rios asserts that although Douglas could identify him at trial as the individual he saw in his yard, Stephan testified that the individual he saw near the blue recycling bin was wearing a white shirt and a baseball cap and looked clean. Rios points out that Stephan's description of the individual he saw contradicts other evidence showing Rios as being covered in mud and wearing dark clothing. Rios contends that Stephan's inability to identify Rios as the individual he saw near the recycling bin undermines the sufficiency of the evidence proving Rios possessed a firearm.

To the contrary, Stephan's inability to identify Rios as the individual he saw merely goes to the weight of his testimony. (See *People v. Mohamed*

9

(2011) 201 Cal.App.4th 515, 522.) The fact that Stephan did not see the face of the individual he saw near the recycling bin does not preclude the existence of sufficient support for the jury's verdict. (*Ibid.*)

Furthermore, Rios's conviction of possession of a loaded firearm was not solely supported by Stephan's testimony. We review the entire record in the light most favorable to the judgment, which means Stephan's testimony comprises only one part of our analysis. (*Steele*, *supra*, 27 Cal.4th 1230.) The entirety of the evidence in the record shows that all the relevant events occurred at around the same time, on the same street, in a neighborhood in Spring Valley. The deputies found both the baggie of methamphetamine and the firearm during their search that retraced what they believed was the likely path Rios had taken. Douglas positively identified Rios as the man who jumped over his back fence, into a muddy corner of his yard, and fled onto Concepcion Avenue. The evidence shows both Rios and the gun were coated in fresh mud. The gun was found in a blue recycling bin in proximity, 30 to 40 feet, from where Rios was ultimately detained.

Stephan's testimony that he had seen a man standing by a blue recycling bin corroborates this evidence. Rios contends that there is no evidence showing that the recycling bin referenced in Stephan's testimony was the same bin the gun was found in. Contrary to Rios's assertion, the lack of evidence showing that the recycling bin referenced in Stephan's testimony was the same as the bin the gun was found in, again, merely speaks to the weight of the witness's testimony. Moreover, there was no evidence presented rebutting the fact that the two recycling bins identified were actually the same bin, leaving room for a reasonable inference to be made that the bin identified by Stephan and the bin in which the deputies found the gun were one in the same.

Rios further claims that the fact that the witness's credibility was not questioned also undermines the sufficiency of the evidence. However, it is not this court's job to evaluate the credibility of a witness on appeal. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 162 (*Letner and Tobin*).) On appeal " '[c]onflicts and even testimony which is subject to justifiable suspicion do not justify reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " (*Id.* at pp. 161-162.)

In summary, based on the entirety of the evidence presented, we conclude that the jury reasonably could have found that Rios possessed, and subsequently discarded, both the baggie of methamphetamine and the firearm. The fact that the jury's findings might also be reconciled with a contrary finding does not undermine the sufficiency of the evidence. (*Letner and Tobin, supra*, 50 Cal.4th at p. 162.)

II

JURY INSTRUCTIONS ON LESSER INCLUDED OFFENSE

Although we conclude that substantial evidence supports Rios's convictions, we still must consider his claim that the trial court committed prejudicial error by failing to instruct the jury on the lesser included offense of simple possession. The People concede that simple possession is a lesser included offense of count 1 under the accusatory pleading test. However, they argue any error in failing to provide the jury instruction was harmless. On the unique facts of this case, we agree with the People.

The law governing a trial court's duty to instruct the jury on lesser included offenses, and the standard of review that this court applies in

reviewing a trial court's decision regarding whether to give such an instruction, are well established:

> "Instructions on lesser included offenses must be given when there is substantial evidence for a jury to conclude the defendant is guilty of the lesser offense but not the charged offense. [Citations.] Substantial evidence is defined for this purpose as 'evidence sufficient to "deserve consideration by the jury," that is, evidence that a reasonable jury could find persuasive.' [Citation.] 'In deciding whether evidence is "substantial" in this context, a court determines only its bare legal sufficiency, not its weight.' [Citation.] The trial court's decision whether or not the substantial evidence test was met is reviewed on appeal under an independent or de novo standard of review. [Citations.]" (*People v. Garcia* (2008) 162 Cal.App.4th 18, 24-25.)

Here, the People concede that simple possession is a lesser included offense of count 1 under the accusatory pleading test. Because the facts actually alleged in the accusatory pleading include all the elements of simple possession of methamphetamine, such that the charge plead in count 1 cannot be committed without also committing the offense of simple possession, a lesser offense is necessarily included under the accusatory pleading test. (See *People v. Birks* (1998) 19 Cal.4th 108, 117.) Therefore, we agree with the People that simple possession was a lesser included offense of count 1.

Rios argues there existed substantial evidence to support the giving of an instruction for simple possession. For purposes of our analysis here, we will assume Rios is correct. However, even if we assume the trial court erred by failing to provide an instruction on simple possession, any such error was harmless.

Error in failing to give a lesser included instruction is reviewed for prejudice under the *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*) standard.

12

(*People v. Breverman* (1998) 19 Cal.4th 142, 165 (*Breverman*.) Under the *Watson* test, an error in failing sua sponte to instruct on a lesser included offense requires reversal of the conviction for the greater offense "if, 'after an examination of the entire cause, including the evidence' [citation], it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred." (*Breverman*, at p. 178.) Probability under *Watson* "does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility." (*People v. Superior Court* (*Ghilotti)* (2002) 27 Cal.4th 888, 918 (*Ghilotti*).)

Our high court in *Breverman* explained that appellate review under *Watson* "focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*Breverman*, *supra*, 19 Cal.4th at p. 177.)

Even if the court erred by failing sua sponte to instruct on the lesser included offenses of simple possession, any such error was harmless under the *Watson* test as it is not reasonably probable (i.e., there is not a reasonable chance) Rios would have obtained a more favorable outcome had the jury been so instructed. (*Breverman, supra,* 19 Cal.4th at p. 178; *Ghilotti, supra,* 27 Cal.4th at p. 918.) We have already concluded that substantial evidence supports the jury's conviction of Rios for all offenses. One of those offenses (count 2) was for being a felon in possession of a firearm. As such, the jury necessarily concluded, beyond a reasonable doubt, that Rios possessed the

handgun.  Further, the evidence supporting the jury's finding on that crime was significant.

As set forth above, the evidence showed Rios hid a loaded, operable .9-millimeter handgun, covered in fresh mud like himself, in a blue recycling bin 30 to 40 feet from where the deputies arrested him.  A witness identified Rios as the man he saw in his backyard in the mud near to where the subject recycling bin was located.  Another witness saw an individual standing by a blue recycling bin and trash can.  In light of this evidence, as well as the jury's verdict of guilt on count 2, there is no possibility that the jury would have found Rios committed simple possession of methamphetamine, but not the greater offense of possession of a controlled substance while armed with a firearm.  Accordingly, any error in failing to give the simple methamphetamine possession instruction was harmless.

### III

### COUNT 3

Rios contends, and the government concedes, that the trial court erred by not staying his sentence, under section 654, for count 3.  We agree.

Section 654 bars double punishment for "[a]n act or omission that is punishable in different ways by different provisions of law . . . ."  The bar extends to multiple offenses constituting one indivisible transaction. (*People v. Hicks* (1993) 6 Cal.4th 784, 789.)  Here, count 3 (possession of ammunition by a felon), like count 2 (possession of a firearm by a felon), should have been stayed under section 654, because the presence of the ammunition within the handgun was part of the same, indivisible course of conduct as the crime charged in count 1 (possession of methamphetamine while armed with a loaded firearm).  Because the court sentenced Rios under count 1, it should have stayed his sentence under count 3 per section 654.

Although we conclude that the trial court should have stayed Rios's sentence under count 3, we note there is some confusion in the record regarding Rios's sentence. During the sentencing hearing, the court orally imposed a concurrent term for Count 3. Yet, the abstract of judgment indicates the sentence for count 3 was stayed under section 654. It is well-settled that an abstract of judgment is not the judgment of conviction, and it does not control if it differs from the oral pronouncement of sentence. (*People v. Jones* (2012) 54 Cal.4th 1, 89.)

Here, the trial court's oral pronouncement of a concurrent term was the actual sentence imposed, rather than the stayed term indicated in the abstract of judgment. Typically, when an abstract of judgment does not reflect the actual sentence imposed in the trial court's oral pronouncement, we have the inherent power to correct the clerical error on appeal. (*People v. Jones*, *supra*, 54 Cal.4th at p. 89.) In the instant matter, however, we need not correct the abstract of judgment at all. Rios was convicted in count 3 for being a felon in possession of ammunition, which was found loaded in the same gun that Rios was charged with possessing in counts 1 and 2. The trial court appropriately stayed the count 2 term under section 654, because both counts 1 and 2 penalized him for possession of the same gun during an indivisible course of conduct. Although the abstract of judgment does not need to be amended, Rios's sentence for possessing ammunition that was found loaded in that same handgun should have also been stayed under section 654. (Cf. *People v. Lopez* (2004) 119 Cal.App.4th 132, 138 ["Where, as here, all of the ammunition is loaded into the firearm, an 'indivisible course of conduct' is present [with the possession of the firearm] and section 654 precludes multiple punishment."].)

To avoid any confusion, we conclude that the trial court erred in orally pronouncing a concurrent sentence for Rios under count 3. Per section 654, the trial court should have stayed any sentence under count 3. However, the abstract of judgment accurately reflects that the sentence for count 3 is stayed and no change is needed to the abstract for that count.

IV

SENATE BILL NO. 136

Rios contends the four one-year prior prison term enhancements imposed pursuant to section 667.5, subdivision (b) must be stricken under the amendment to section 667.5, subdivision (b) by Senate Bill No. 136 (2019-2020 Reg. Sess.) effective January 1, 2020. The People concede the issue.

Signed by the Governor on October 8, 2019, and effective January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) amends section 667.5, subdivision (b), to eliminate the one-year prior prison term enhancement for most prior convictions including Rios's. (Stats. 2019, ch. 590, § 1.)

Because Senate Bill No. 136 (2019-2020 Reg. Sess.) became effective before Rios's judgment is final, we agree with the parties that the amended law will apply to him retroactively. (See *In re Estrada* (1965) 63 Cal.2d 740, 744-745 [absent evidence of contrary legislative intent, ameliorative criminal statutes apply to all cases not final when the statute takes effect].) Therefore, we modify the judgment to strike Rios's four one-year prior prison term enhancements. We need not remand this matter for resentencing because the trial court already imposed the maximum sentence available. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 342.)

DISPOSITION

The judgment is reversed in part to address sentencing errors under section 654 and Senate Bill No. 136 (2019-2020 Reg. Sess.). In all other

respects, the judgment is affirmed.  The trial court is instructed to amend the abstract of judgment consistent with this opinion and forward same to the Department of Corrections and Rehabilitation.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.