Opinion
STEVENS, P. J.
In 1972, following a court trial, Judge Kearney found respondent not guilty of two misdemeanor offenses.[1]
In June, 1977, respondent filed a motion to seal the records pursuant to Penal Code section 851.8 on the ground that he was innocent of the charges. He urged that the continued existence of the records of arrest and prosecution posed serious professional impediments and were of grave concern to him and his family.
Judge Kearney, who had retired, was assigned to heár the matter. He specifically found that respondent was factually innocent of the charges. He also rejected the People’s contention that the statute was only applicable to acquittals occurring after January 1, 1976.
The People appeal from the order sealing respondent’s arrest records.[2]

*Supp. 20 The Statute
Penal Code section 851.8, which was enacted in 1975, reads as follows: “ Whenever a person is acquitted of a charge and it appears to the judge presiding at the trial wherein such acquittal occurred that the defendant was factually innocent of the charge, the judge may order that the records in the case be sealed, including any record of arrest or detention, upon the written or oral motion of any party in the case or the court, and with notice to all parties to the case. If such an order is made, the court shall give to the defendant a copy of such order and inform the defendant that he may thereafter state that he was not arrested for such charge and that he was found innocent of such charge by the court.” (Italics added.)
Issue
It has been established that respondent was completely innocent of the charges brought against him in 1972. The question presented is whether he, and others similarly situated, may apply for relief under section 851.8 if they were acquitted prior to January 1, 1976.
Discussion
Although arrest records do serve valid and important public purposes, an arrest can haunt aperson for therest of his life. (See generally, Loder v. Superior Court, supra, 17 Cal.3d 859, and authorities cited.)[3] See also Briscoe v. Reader’s Digest Association, Inc., supra, 4 Cal.3d 529.) Penal Code section 851.8, which was enacted in 1975, represents a compromise between these interests, and allows an adult to apply for complete relief upon a showing that he was acquitted and was “factually innocent.” (See Loder v. Superior Court, supra, 17 Cal.3d 859, 876, fn. 21; see Pulich, The Rights of the Innocent Arrestee: Sealing of Records under California Penal Code Section 851.8, supra, 28 Hastings L. J. 1463 et seq.)
*Supp. 21 A remedial statute of this type should be liberally construed to promote the underlying public policy. If the meaning is doubtful, the statute must be construed as to extend the remedy. (See Pen. Code, § 4; Continental Cas. Co. v. Phoenix Constr. Co. (1956) 46 Cal.2d 423, 434-435 [296 P.2d 801, 57 A.L.R.2d 914]; Alford v. Pierno (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].)
The Attorney General points out that retroactivity cannot be implied solely because the statute is remedial and subject to the rule of liberal construction. (DiGenova v. State Board of Education (1962) 57 Cal.2d 167, 174 [18 Cal. Rptr. 369,367 P.2d 865].) Indeed, Penal Code section 3 incorporates a presumption against retroactivity. Nevertheless, we are satisfied that the statute in question was intended to permit persons such as respondent to secure relief.
The rule of construction set forth in Penal Code section 3 is certainly not a “straight jacket.” “It is to be applied only after, considering all pertinent factors, it is determined that it is impossible to ascertain the legislative intent.” (In re Estrada (1965) 63 Cal.2d 740, 746 [48 Cal.Rptr. 172, 408 P.2d 948]; In re Marriage of Bouquet (1976) 16 Cal.3d 583, 587 [128 Cal.Rptr. 427, 546 P.2d 1371]; see e.g. Holder v. Superior Court (1969) 269 Cal.App.2d 314 [74 Cal.Rptr. 853].) A wide variety of factors may illuminate the legislative design, such as context, the object in view, the evils to be remedied, the history of the times, and of legislation upon the same subject, public policy, and contemporaneous construction. (In re Marriage of Bouquet, supra, 16 Cal.3d 583, 587.)
At the time this statute was under consideration, numerous cases and law review articles had focused on the plight of the innocent arrestee. The Legislature had previously given protection to certain classes of persons. (See Pen. Code, §§ 851.7 & 1203.45 and Welf. & Inst. Code, § 781.) In 1975, the Legislature reached a compromise, and concluded that adults, who were acquitted and were truly innocent, should be entitled to relief.[4]
*Supp. 22 There is nothing in the language of the statute which would suggest that persons such as respondent were deemed unworthy of consideration. On the contrary, it appears that the legislation was prompted by the recognition that persons, such as respondent, had already suffered adverse consequences and should be entitled to relief. Since the Legislature did not elect to draw any distinction between those acquitted in the past, and those who might be acquitted in the future, it hardly seems realistic to draw the feigned distinctions urged by the People.
We turn next to the language of the statute itself. In effectuating the purpose of the law, we must give significance to each of the words employed and “interpret them according to the usual, ordinary import of the language employed in framing them.” (People ex rel. Younger v. Superior Court (1976) 16 Cal.3d 30, 40, 43 [127 Cal.Rptr. 122, 544 P.2d 1322]; Moyer v. Workmen’s Comp. Appeals Bd. (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; Code Civ. Proc., § 1858.)
The statute commences with the word, “whenever.” That word means the same as “if’; (People v. Melone (1887) 73 Cal. 574, 577 [15 P. 294]; “as long as”; “as often as”; “as soon as”; “at any time when”; “at whatever time”; “at whatever time it shall happen”; “at what time soever”; (Morse v. Custis (1940) 38 Cal.App.2d 573, 576-577 [101 P.2d 702]); “at whatever time”; “at what time soever”; “in any and eveiy instance in which”; “as soon as”; “where”; “in case”; and “if.” (Black’s Law Dict. (4th ed.) p. 1768.) Obviously, the plain language of this statute demonstrates that it was applicable to anyone who had been acquitted, and not merely to those who are acquitted after January 1, 1976. We are persuaded that the Legislature knew what it was saying and meant what it said. (People v. Pina (1977) 72 Cal.App.3d Supp. 35, 39 [140 Cal.Rptr. 270].)[5]
If the word, “whenever” were deemed to be ambiguous, other rules of-construction come into play which are fatal to the People’s position. *Supp. 23 First, Penal Code .provisions must be construed according to the fair import of their terms with a view to effect their objects and to promote justice. (Pen. Code, § 4.) Second, if a section of the Penal Code is susceptible to two constructions, the defendant is entitled to the benefit of any doubt as to the true interpretation of words or the construction of language used in the statute. (Keeler v. Superior Court (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) The People’s construction of this statute stands the latter rule on its head. Further, it would hardly promote justice.
Finally, if we were to adopt the Attorney General’s argument, we would be forced to confront a serious equal protection issue. (See In re Kapperman (1974) 11 Cal.3d 542 [114 Cal.Rptr. 97, 522 P.2d 657].) Classifications between those to whom the state accords and withholds substantial benefits must be reasonably related to a legitimate public purpose. (In re Kapperman, supra, 11 Cal.3d 542, 545.) Courts have promptly invalidated artificial distinctions found in statutes permitting sealing of records. (See McMahon v. Municipal Court (1970) 6 Cal.App.3d 194 [85 Cal.Rptr.. 782]; People v. Ryser (1974) 40 Cal.App.3d 1 [114 Cal.Rptr. 668]; People v. Pruett, supra.)
We are unable to find any cogent reason why persons acquitted on January 5, 1976, should be eligible to apply for relief while those acquitted in 1972 or on December 28, 1975, should be ineligible to apply for relief. Nevertheless, we do not deem it necessary to dispose of the constitutional issue because the statute simply does not admit to the construction urged by the People.
We conclude that Penal Code section 851.8 is fully retroactive and authorizes anyone who is or has been acquitted to apply for relief.
Disposition
The order is affirmed.
Dodds, J., and Smith, J.,* concurred.

Appellate courts use only the first name and initials of minors involved in juvenile proceedings. (See T.N.G. v. Superior Court (1971) 4 Cal.3d 767, 779, fn. 1 [94 Cal.Rptr. 813, 484 P.2d 981].) Curiously, even when a reviewing court finds that an adult is entitled to an order sealing his records his name is still emblazoned in print. (See, e.g. People v. Pruett (1975) 51 Cal.App.3d 329 [124 Cal.Rptr. 273].) Of course, our records in this case are open to the public. See, generally, Government Code section 6200; Cox Broadcasting Corp. v. Cohn (1975) 420 U.S. 469, 492-496 [43 L.Ed.2d 328, 347-350, 95 S.Ct. 1029], Compare Briscoe v. Reader’s Digest Association, Inc. (1971) 4 Cal.3d 529, 537-540 [93 Cal.Rptr. 866, 483 P.2d 34, 57 A.L.R.3d 1], However, while we have elected to publish this opinion, so that others acquitted before January 1, 1976, can now apply for relief, it would hardly serve the public interest to mention the offenses. Suffice it to say that respondent was innocent. The People do not contend otherwise.

An order denying a petition to seal arrest records is appealable. (See People v. Pruett, supra, 51 Cal.App.3d 329, 331, fn. 1 (appeal from an order denying relief under Pen. Code, § 851.7).) Given the fact that the retention of an arrest record may, in a proper case, serve an important public interest (Loder v. Municipal Court (1976) 17 Cal.3d 859, 868 [132 Cal.Rptr. 464, 553 P.2d 624]) we are satisfied that an order granting relief is appealable since it is “an order miade after judgment affecting the substantial rights of the people.” (Pen. Code, § 1466, subd. 1(e); see e.g. People v. Elinson (1977) 70 *Supp. 20 Cal.App.3d Supp. 19 [138 Cal.Rptr. 881] (indication that the People may appeal from an order sealing records made pursuant to Pen. Code, § 1203.45); see generally, Pulich, The Rights of the Innocent Arrestee: Sealing of Records under California Penal Code, Section 851.8 (1977) 28 Hastings L.J. 1463, 1501.)

A representative bibliography of cases and law review articles is found in Loder. An annotation is found in 46 A.L.R.3d 889 et seq. For a practical guide, see Jones, The Complete Advocate: Mitigating Your Client’s Record (1977) 52 State Bar J. 113 et seq.

We note that the legislation was enacted between the time hearing was granted in Loder and the date the Supreme Court filed its opinion. Of course, Loder involved a person, like respondent, who was arrested in 1972.
While we have reviewed the evolution of the bill, and note that the Legislature limited relief to those who were acquitted and factually innocent, (See Loder v. Municipal Court, supra, 17 Cal.3d 859, 876, and fn. 21), the ultimate version commenced with the word, “whenever.” We think this language was deliberately included to express the true intent of the Legislature.

Although Penal Code sections 851.7 subdivision (c), 1203.4a subdivision (a), and 1203.45 subdivision (b) do contain express provisions making them retroactive, Penal Code section 851.6 subdivisions (a) and (b) and Welfare and Institutions Code section 781 commence with the words, “in any case.” Therefore, we cannot conclude that the Legislature has consistently employed provisions converning retroactivity in remedial statutes of this type. Indeed, one thing is quite apparent: None of these statutes contain provisions expressly limiting them to future events.
We recognize that the statute refers to a finding by the trial judge and it is possible that he might be dead by the time an application for relief is made. This appears to be a problem for the applicant. We intimate no view as to whether there is a solution or what the solution might be. Perhaps, the Legislature will provide a solution.

Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.