[No. F037844. Fifth Dist. June 7, 2002.]

THE PEOPLE, Plaintiff and Appellant, v.
VICENTE FIGUEROA BENAVIDES, Defendant and Respondent.

**COUNSEL**

Bill Lockyer, Attorney General, David P. Druliner and Robert R. Anderson, Chief Assistant Attorneys General, Arnold O. Overoye, Assistant Attorney General, and Brian R. Means, Deputy Attorney General, for Plaintiff and Appellant.

Michael Laurence, Cristina Bordé and Melissa Hooper, under appointments by the Supreme Court; Lynne S. Coffin, Public Defender, under appointment by the Supreme Court, and Kent Barkhurst, Deputy Public Defender, for Defendant and Respondent.

**OPINION**

**VARTABEDIAN, Acting P. J.**—In 1993, Vicente Figueroa Benavides was found guilty of first degree murder with special circumstances and sentenced to death. An automatic appeal to the California Supreme Court followed. (Pen. Code, § 1239, subd. (b).)[1] The Supreme Court appointed appellate counsel to handle his appeal and later, in 1999, appointed the Habeas Corpus Resource Center his counsel in this proceeding, to represent Benavides in his habeas corpus proceedings before that court.

In August 2000 the People filed a motion in superior court to restrict juror contact by Benavides or anyone acting or working on his behalf, benefit, or interest. The People sought an order requiring Benavides or his representatives to show good cause and to obtain court approval before contacting former jurors in the case. In addition to the above, or as an alternative, the People asked the court to order that Benavides or his representatives be limited in contacting former jurors through the court only. As a third additional requirement, or in the alternative to the above requirements, the People sought an order that any posttrial questioning of jurors be conducted under the direct supervision and control of the court, with inquiry restricted to those matters found by the court as both relevant and proper under Evidence Code section 1150.

On February 2, 2001, after the matter had been briefed and the parties had made their arguments at hearings, the superior court filed an order granting

---

[1] All future code references are to the Penal Code unless otherwise noted.

the motion in part, holding that if the parties contact a juror they must abide by the rules set forth in Code of Civil Procedure section 206 and must read verbatim to the juror the court's predischarge admonition. In all other respects the motion was denied. The People appeal this order. We dismiss the appeal as taken from a nonappealable order.

*Discussion*

The People make three alternative claims. Two of those alternatives are requests that we declare a new rule of criminal procedure: (1) a rule prohibiting litigants and their agents from contacting former jurors absent a preliminary showing of good cause; or (2) a rule of criminal procedure requiring that juror interviews, when warranted, be conducted under the direct supervision of the trial court. Alternatively, the People claim the trial court abused its discretion in refusing to limit postverdict juror interrogations by the litigants.

Benavides raises several issues regarding the appealability of the February 2, 2001, order in general. He asserts we lack jurisdiction to hear the matter because the California Supreme Court has exclusive appellate jurisdiction when a judgment of death has been pronounced. Next, he argues the appropriate vehicle for review of the order is a petition for writ of mandate.[2] Finally, Benavides claims the order is not appealable because it does not affect the substantial rights of the People in enforcing the judgment.

█ We agree with Benavides that the order appealed from is not an appealable order because it does not affect the People's substantial rights as delineated in statutory and case law.

█ " 'The Legislature has determined that except under certain limited circumstances the People shall have no right of appeal in criminal cases' [citation]. Those circumstances are enumerated in [Penal Code ]section 1238." (*People v. Drake* (1977) 19 Cal.3d 749, 754 [139 Cal.Rptr. 720, 566 P.2d 622].) Relevant here is subdivision (a)(5) of section 1238. It provides that the People may take an appeal from "[a]n order made after judgment, affecting the substantial rights of the people."[3] "[T]he courts are precluded from so interpreting section 1238 as to expand the People's right of appeal

---

[2]In this argument, Benavides asks us to take judicial notice of the People's petition for a writ of mandate to the California Supreme Court and the Supreme Court's summary denial of that petition. That petition was based on the same February 2, 2001, order that is the subject of this appeal. The existence of the proceeding in the Supreme Court has no bearing on the question of whether the order is an appealable order. Because the appealable order question resolves this case, we deny Benavides's motion for judicial notice.

[3]The People do not claim that any other subdivisions of section 1238 apply.

into areas other than those clearly specified by the Legislature." (*People v. Gaines* (1980) 112 Cal.App.3d 508, 512 [169 Cal.Rptr. 381].)[4]

■ The People argue the order is appealable because it affects their substantial rights. In particular they assert they "have a substantial interest in protecting both the finality and integrity of the verdict, and the trial court's order denying the People's motion to impose reasonable limits on juror contact adversely affects these interests." The People contend juror manipulation and tampering result in unnecessary delay that substantially and adversely affects their right to finality. They claim this concern is particularly true here where the defendant has been sentenced to death and the People are precluded from executing the sentence until postconviction review is completed.

"In *People v. Garcia* (1931) 120 Cal.App. Supp. 767 [7 P.2d 401], the court stated in order to affect the People's substantial rights an order 'must in some way affect the judgment or its enforcement or hamper the further prosecution of the particular proceeding in which it is made. [Citations.]' (*Id.* at p. Supp. 770.)" (*People v. McGuire* (1993) 14 Cal.App.4th 687, 701 [18 Cal.Rptr.2d 12].)

Although the People have been allowed in other cases to appeal from a variety of orders that fall within section 1238, subdivision (a)(5), the holding of appealability has typically been made without a guiding discussion. Examples include: (1) an order erroneously granting a defendant credits against his or her prison sentence (*People v. Minjarez* (1980) 102 Cal.App.3d 309, 311-312 [162 Cal.Rptr. 292]); (2) a certificate of rehabilitation issued to a defendant before the period of rehabilitation required by law has been completed (*Daudert v. People* (1979) 94 Cal.App.3d 580, 582-585 [156 Cal.Rptr. 640]); (3) an order granting probation (*People v. Warner* (1978) 20 Cal.3d 678, 681-682 [143 Cal.Rptr. 885, 574 P.2d 1237])[5]; (4) an order erroneously staying sentence pursuant to section 654 (*People v. Perez* (1979) 23 Cal.3d 545, 549, fn. 2 [153 Cal.Rptr. 40, 591 P.2d 63]; *People v. Holly* (1976) 62 Cal.App.3d 797, 801-802 [133 Cal.Rptr. 331]); and (5) an order reducing a felony to a misdemeanor (*People v. Douglas* (1999) 20 Cal.4th 85, 96 [82 Cal.Rptr.2d 816, 972 P.2d 151]).

Other cases have offered brief explanations why the appeal satisfies the requirements of section 1238, subdivision (a)(5). One such case is *People v.*

---

[4]The parties do not dispute that this is an order after judgment within the meaning of section 1238, subdivision (a)(5). We assume for the sake of argument that the order here is "an order made after judgment."

[5]Section 1238, subdivision (d) now provides, "Nothing contained in this section shall be construed to authorize an appeal from an order granting probation." Currently, the People must seek appellate review of an order granting probation by means of a petition for writ of mandate or prohibition.

*McGuire, supra,* 14 Cal.App.4th 687. There, after the trial court ordered McGuire be allowed to post bail pending appeal, the appellate court found the People could appeal the order because "[t]he order releasing a convicted felon into society affects enforcement of the judgment and implicates the People's substantial rights to security." (*Id.* at p. 701.)

The appellate court explained the People's substantial interest in *People v. Maggio* (1929) 96 Cal.App. 409 [274 P. 611]. After the defendant's appeal was final and the remittitur had issued, the defendant made a motion to modify the judgment of imprisonment to a fine. The trial court granted the motion. The People appealed and the appellate court found the order was appealable. "The People have a right to rely upon the finality of judgments and to know when a judgment has become final that there has been an end to that particular litigation." (*Id.* at p. 410.) The judgment against the defendant had been entered and affirmed and the People had an interest in maintaining its integrity. (*Id.* at p. 411.)

In *People v. Gilbert* (1944) 25 Cal.2d 422 [154 P.2d 657] the defendants pleaded guilty to murder and admitted special circumstances. A judgment of death was entered and affirmed on appeal to the Supreme Court. After the Supreme Court had issued the remittitur, affirming the judgments, one defendant made a motion to vacate the judgment and his plea; the other made a motion to vacate the judgment. The trial court found the judgments null and void and pronounced new judgments of life imprisonment. (*Id.* at pp. 425-426.) The People appealed and the Supreme Court found they had a right to appeal. "The effect of the order here appealed from was to modify substantially the judgments originally entered. Such an order, obviously, is one 'made after judgment, affecting the substantial rights of the people' and is within the purview of section 1238(5) of the Penal Code." (*Id.* at p. 444.)

In each of the above cases, the orders entered by the trial court and appealed by the People either directly altered the judgment or somehow directly affected the defendant's status as it related to the judgment already imposed.

The People here rely on *People v. White* (1978) 77 Cal.App.3d Supp. 17 [144 Cal.Rptr. 128] (*White*) and *People v. Pogre* (1986) 188 Cal.App.3d Supp. 1 [234 Cal.Rptr. 590] to support their argument of appealability by illustrating the breadth of section 1238, subdivision (a)(5). In *White,* the trial court found White not guilty of two misdemeanor offenses. Subsequently, the court found he was factually innocent of the charges and sealed White's arrest records. The People appealed from the order sealing the arrest records. (*White, supra,* at p. Supp. 19.) The superior court, appellate division, found

that an order granting a petition to seal arrest records affects the substantial rights of the People because "the retention of an arrest record may, in a proper case, serve an important public interest (*Loder v. Municipal Court* (1976) 17 Cal.3d 859 [132 Cal.Rptr. 464, 553 P.2d 624])." (*Id.* at p. Supp. 19, fn. 2.)[6] The court in *Pogre* followed *White* without further analysis.

In *Loder v. Municipal Court, supra*, 17 Cal.3d 859 Loder sought to have his arrest record erased after charges against him had been dismissed. The trial court denied his motion and Loder filed a petition for writ of mandate claiming a violation of his constitutional right to privacy. The Supreme Court found that the trial court properly denied the motion because there is a substantial governmental interest in consulting arrest records for multiple purposes by the courts, police, prosecutors, probation departments, and parole authorities. For example prior arrests may be used for investigating other crimes, they may be used by the prosecutor in exercising discretion to file charges at all or in determining whether to file misdemeanor or felony charges, the court may consider a prior arrest record in determining the question of pretrial release, prior arrest records may be utilized by the probation department in a presentence report[7], and arrest records may be considered in determining parole release dates from prison. (*Loder, supra*, at pp. 864-868.)

Although the granting of a motion expunging arrest records does not affect a judgment directly, the order eliminates records that would have been available to the prosecution and utilized in carrying out their prosecutorial duties in the future.

Unlike the previously cited cases where the order after judgment altered the judgment, altered the defendant's status, or altered records normally retained that aid the People in their prosecutorial function, the order here did not effect any such change. It did not alter the judgment. It did not affect defendant's status postjudgment. It did not preclude the People from having access to something that was previously routinely accessible. The order of the trial court here did not change or alter anything already in existence. The

---

[6]The court in *White* relied in part on *People v. Pruett* (1975) 51 Cal.App.3d 329 [124 Cal.Rptr. 273]. In *Pruett,* the trial court denied the defendant's motion to seal his arrest records and he appealed pursuant to section 1466, which allows an appeal by the defendant in a misdemeanor case "from any order made after judgment, affecting his or her substantial rights." The appellate court found that this "was an order made after judgment affecting *defendant's* substantial rights and was appealable." (*Pruett, supra*, at p. 331, fn. 1, italics added.)

[7]Prior arrests not resulting in a conviction cannot be included in a probation report unless supported by facts concerning the arrest. (Cal. Rules of Court, rule 4.411.5(a)(3).)

order thus does not fall within the types of cases where it has been held that the order affected the substantial rights of the People.

The People assert that their substantial interest is in protecting both the finality and the integrity of the verdict. They argue that the uncontrolled invasion of juror privacy risks juror manipulation and tampering and thus adversely affects the finality and integrity of the verdict.[8] The invasion of juror privacy is anything but uncontrolled. The jurors have an absolute right to discuss or not to discuss the deliberation or verdict with anyone. The parties must obtain a juror's consent prior to discussing the case, and any unreasonable contact is to be immediately reported to the trial judge. Discussions with consenting jurors may occur only at reasonable times and places. The trial court must inform the jurors of these rights prior to discharge. (Code Civ. Proc., § 206.) The trial court did not issue an order that deviated from the rules in place to protect juror privacy, and the People do not argue otherwise. The order here complied with the rules in place to prevent invasions of privacy of jurors.

The People also argue that they are denied their right to prompt enforcement of the judgment if the defendant is allowed to harass, manipulate, and tamper with former jurors and delay execution of sentence.[9] Again, rules are in place to prevent harassment, manipulation and tampering with former jurors. In addition, rules are in place to provide for expeditious review in capital cases of claims involving juror misconduct. The order sought here clearly would have no application to a defendant's direct appeal, but would involve collateral habeas corpus proceedings because it encompasses evidence sought after trial and not contained in the record on appeal. The California Supreme Court has made clear that it insists that "a litigant mounting a collateral challenge to a final criminal judgment do so in a timely fashion. By requiring that such challenges be made reasonably promptly, we vindicate society's interest in the finality of its criminal judgments, as well as the public's interest 'in the orderly and reasonably prompt implementation of its laws.' " (*In re Sanders* (1999) 21 Cal.4th 697,

---

[8]The People fail to make any showing that in this case the former jurors' privacy has been invaded or that they are particularly susceptible of abuse by defendant's representatives. While the conviction here (murder of a 21-month-old child during the commission of various sex crimes), like any special circumstance murder conviction, is for extremely serious criminal conduct, there is nothing about the particular facts of the case that would cause jurors to have fears over and above ordinary concerns regarding their safety. For example, this is not a gang crime where jurors might fear retaliation from gang members who are not incarcerated. Benavides acted alone in committing the murder.

[9]The People have filed a motion requesting this court to take judicial notice of superior court proceedings in other cases where the People sought orders similar to the order sought here. The trial court orders in other superior court actions have no relevance to the question of whether the order here is an appealable order. The request for judicial notice is denied.

703 [87 Cal.Rptr.2d 899, 981 P.2d 1038].) The California Supreme Court enforces time limits on the filing of petitions for writs of habeas corpus in cases in which the death penalty has been imposed. (*Ibid.*) "In capital cases, a habeas corpus petitioner bears the burden of establishing the timeliness of his or her petition." (*Id.* at pp. 704-705.)[10]

 The order here did not alter procedures and law already in effect to ensure the People's right to the prompt enforcement and prosecution of the judgment. It did not alter the People's right to the finality of the verdict.

We find the People have failed to show that the order appealed from falls within section 1238, subdivision (a)(5) as an order after judgment affecting their substantial rights. The order is therefore not appealable.[11]

Because the order appealed from is not an appealable order, it is not necessary to discuss whether jurisdiction would be before us or the California Supreme Court.

### Disposition

The appeal is dismissed.

Buckley, J., and Cornell, J., concurred.

---

[10]We note that the People are expressly given a right of appeal upon the return of a writ of habeas corpus discharging a defendant or granting relief sought. (§ 1506.)

[11]In the recent case of *People v. Leonard* (2002) 97 Cal.App.4th 1297 [119 Cal.Rptr.2d 57], the Court of Appeal, Third District, reaches this same conclusion.