Filed 4/24/14

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOE WILLIE HAYNES,<br><br>    Defendant and Appellant. | F067275<br><br>(Super. Ct. No. VCF037228-98)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Ronn M. Couillard, Judge.

Michael B. Sheltzer, Public Defender, Lisa Bertolino, Assistant Public Defender, Angela Marie Krueger, Deputy Public Defender, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Kelly E. LeBel, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

# INTRODUCTION

"On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012, which amended [Penal Code] sections 667 and 1170.12 and added [Penal Code] section 1170.126 (hereafter the Act [or Proposition 36]).[1]  The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment.  Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence.  The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor.  In all other cases, the recidivist will be sentenced as a second strike offender.  (§§ 667, 1170.12.)  The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety.  (§ 1170.126.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168.)

Shortly after the Act went into effect, Joe Willie Haynes (defendant), an inmate serving a term of 25 years to life plus seven years following conviction of felonies that were not violent (as defined by § 667.5, subd. (c)) or serious (as defined by § 1192.7, subd. (c)), filed a motion seeking resentencing under the Act.  The trial court determined defendant did not qualify (was ineligible) for resentencing and denied the motion. Defendant now appeals.

In the published portion of this opinion, we hold that the trial court's order is appealable.  In the unpublished portion, we hold that an inmate serving an indeterminate

---

[1]     Further statutory references are to the Penal Code unless otherwise stated.

life term under the three strikes law may be found to have been "armed with a firearm" in the commission of his or her current offense(s), so as to be disqualified from resentencing under the Act, even if he or she did not carry the firearm on his or her person. Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

On November 20, 1997, a parole search was conducted at the Visalia residence of defendant and Tammy Carter. As officers entered the apartment, defendant was walking out of one of the bedrooms.[2] A search of the residence revealed, in the northeast bedroom, a pair of pants in which were a plastic bag containing 1.8 grams of cocaine base, a sandwich-type bag containing 3.4 grams of marijuana, and $500 cash.[3] On top of the closet were $1,300 and some Zig-Zag cigarette papers. A loaded handgun was hidden in the box springs of the bed. There were five live rounds in the handgun, and a sixth round of the same type and brand was found in or on the nightstand on the south side of the bed. On the same nightstand were items in defendant's name and what appeared to be his articles of property. Pay-and-owe sheets were located in the nightstand on the north side of the bed, and a magazine for a nine-millimeter handgun, containing live rounds, was also found in that nightstand. Cocaine residue was found on a counter in the kitchen, and there was a box of sandwich bags in one of the kitchen drawers.

Defendant gave a statement in which he denied knowledge of the gun. He admitted the drugs were his, but maintained they were for his personal use, although he admitted having given some to a friend the night before. He also said the money was his and that he had saved it since he got out of prison in February of that year. He did not

---

[2]     The northeast bedroom was shared by the adults. The other bedroom "obviously" was a child's or children's bedroom.

[3]     No suspected narcotics were found in any clothing that appeared to belong to Carter.

3.

explain how that was possible in light of his previous claim he had not worked since the 1980's. Despite defendant's statement, an officer who was an expert in narcotic transactions and possession for sale opined the drugs were possessed for sale.

Defendant was subsequently charged with possession of cocaine base for sale while personally armed with a firearm and having suffered a prior narcotics conviction (§ 12022, subd. (c); Health & Saf. Code, §§ 11351.5, 11370.2, subd. (a); count 1), possession of marijuana for sale while armed with a handgun (§ 12022, subd. (a)(1); Health & Saf. Code, § 11359; count 2); allowing a place to be used for preparing or storing controlled substances (Health & Saf. Code, § 11366.5, subd. (a); count 3), and possession of a firearm by a felon (former § 12021, subd. (a)(1), see now § 29800, subd. (a); count 4). With respect to each count, it was alleged defendant had suffered three prior "strike" convictions (§ 1170.12, subd. (c)(2)(A)) and had served two prior prison terms (§ 667.5, subd. (b)). On April 15, 1998, defendant pled no contest, pursuant to *People v. West* (1970) 3 Cal.3d 595 (*West*), to all charges and special allegations. On June 22, 1998, he was sentenced to a total term of 25 years to life plus seven years in prison.

On November 29, 2012, defendant moved for resentencing pursuant to Proposition 36. The People opposed the motion, asserting defendant's no contest plea to a section 12022, subdivision (c) allegation in connection with his current offenses constituted pleading and proof of a disqualifying factor. Defendant argued: (1) The electorate would have understood being "armed with a firearm" (the pertinent disqualifying factor) to occur when a defendant was carrying a firearm while perpetrating a crime, not where, as in the present case, defendant was not in actual physical possession of the firearm; (2) An allegation under section 12022, subdivision (c) could be found where the defendant was in constructive, not actual, possession of a firearm; and (3) Since the firearm was not found on defendant's person, and he entered a *West* plea and maintained his innocence while denying any knowledge of the gun, nothing in the

4.

record constituted proof defendant was armed with a firearm within the meaning of Proposition 36. Accordingly, defendant claimed, he was qualified for resentencing.

On April 2, 2013, a hearing was held on defendant's motion. After argument concerning what constituted being "armed with a firearm" within the meaning of the Act, the trial court observed it had presided over the preliminary hearing for defendant's current offenses, and was "well acquainted with the factual basis" for defendant's *West* plea. Accordingly, it found nothing to warrant ignoring the section 12022, subdivision (c) admission. The court then agreed with the People that the language of the Act was "relatively clear" and "fit the scenario of the traditional findings of [section] 12022[, subdivision] (c) to which [defendant] entered the plea." Accordingly, the court found defendant not qualified for resentencing and denied defendant's motion.

Defendant filed a timely notice of appeal from the court's ruling. Because the question whether such a ruling is appealable is not settled, defendant also separately filed a petition for writ of mandate and/or habeas corpus (case No. F067318).[4]

---

[4] The appealability issue is currently pending before the state Supreme Court. (E.g., *People v. Leggett* (2013) 219 Cal.App.4th 846, review granted Dec. 18, 2013, S214264 [concluding denial is not appealable if petition was erroneously filed by individual whose sentence is based on conviction for serious or violent felony, but is appealable in all other instances]; *Teal v. Superior Court* (2013) 217 Cal.App.4th 308, review granted July 31, 2013, S211708 [concluding denial is nonappealable because Act confers no substantial rights on eligibility issue]; *People v. Hurtado* (2013) 216 Cal.App.4th 941, review granted July 31, 2013, S212017 [concluding denial is appealable because Act confers a "substantial right"].)

Because, as we shall explain, we conclude the ruling in issue is appealable, we will deny the writ petition by separate order. In so doing, we do not decide whether a denial of eligibility for resentencing could ever properly be challenged by a petition for writ of mandate or habeas corpus.

## DISCUSSION

### I.     The trial court's ruling is appealable.

Both parties say the trial court's denial of defendant's motion is appealable.  We agree.

"'It is settled that the right of appeal is statutory and that a judgment or order is not appealable unless expressly made so by statute.'  [Citations.]"  (*People v. Mazurette* (2001) 24 Cal.4th 789, 792.)  Section 1170.126 affords a procedure whereby inmates serving terms as third strike offenders can seek to be resentenced as second strike offenders, but it does not specifically authorize an appeal from the denial of a petition or motion for resentencing.  However, section 1237 provides that a defendant may appeal "[f]rom a final judgment of conviction" (*id.*, subd. (a)) or "[f]rom any order made after judgment, affecting the substantial rights of the party" (*id.*, subd. (b)).

There can be little doubt the trial court's denial of defendant's motion was an order made after judgment, since, in a criminal case, judgment is synonymous with the imposition of sentence.  (*Fadelli Concrete Pumping, Inc. v. Appellate Department* (1995) 34 Cal.App.4th 1194, 1200.)  Sentence was imposed for defendant's current offenses in 1998.  Although "'an order ordinarily is not appealable when the appeal would merely bypass or duplicate appeal from the judgment itself[]'" (*People v. Totari* (2002) 28 Cal.4th 876, 882), an appeal from a trial court's denial of a section 1170.126 petition or motion pertains only to that particular ruling, and so does not constitute an improper second appeal from the judgment.

The question, then, is whether the trial court's ruling affected defendant's substantial rights.  The trial court's consideration of a petition under the Act is a two-step process.  First, the court determines whether the petitioner is eligible for resentencing.  If the petitioner is eligible, the court proceeds to the second step, and resentences the petitioner under the Act unless it determines that doing so would pose "an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (f).)

6.

Here, we are concerned with the first step of the process — the initial eligibility determination. Section 1170.126 grants the trial court the power to determine an inmate serving an indeterminate life term as a third strike offender is eligible for resentencing as a second strike offender *only* if, as an initial matter, the inmate satisfies the three criteria set out in subdivision (e) of the statute. Those criteria are: (1) The inmate is serving an indeterminate term of life imprisonment imposed under the three strikes law for a conviction of a felony or felonies that are not defined as serious and/or violent under section 667.5, subdivision (c) or section 1192.7, subdivision (c); (2) The inmate's current sentence was not imposed for a controlled substance offense with a specified weight enhancement, an enumerated sex offense, or an offense during the commission of which "the defendant used a firearm, was armed with a firearm or deadly weapon, or intended to cause great bodily injury to another person"; and (3) The inmate has no prior convictions for certain specified offenses. (§ 1170.126, subd. (e); see §§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).) If the inmate does not satisfy one or more of the criteria, section 1170.126 grants the trial court no power to do anything but deny the request for resentencing.

Although a trial court's ruling at the first step of the process does not change an inmate's sentence, we nevertheless believe it affects the inmate's substantial rights. An initial eligibility determination affects whether the trial court will exercise resentencing discretion. This is not an idle exercise; where, as here, the trial court determines the inmate is ineligible, the process is finished and the inmate has no further opportunity to be resentenced as a second strike offender.[5]

---

[5] Where an inmate is determined to be eligible for resentencing, the burden shifts to the prosecution to establish dangerousness (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1301 & fn. 25) and, if the prosecution does not carry its burden, resentencing the inmate as a second strike offender necessarily follows (§ 1170.126, subd. (f); *Kaulick*, *supra*, at p. 1299).

*People v. Totari*, *supra*, 28 Cal.4th 876, is instructive. In that case, the California Supreme Court concluded a trial court's denial of a motion to vacate a judgment based on a guilty or nolo contendere plea for failure to advise a defendant of the potential adverse immigration consequences resulting from his or her conviction, was appealable. (*Id.* at pp. 879, 887.) Although section 1016.5, which requires such an advisement and provides for a motion to vacate where the advisement was not given, did not expressly authorize an appeal from the denial of such a motion to vacate, the state high court concluded an appeal was permissible pursuant to section 1237, subdivision (b). (*People v. Totari*, *supra*, at pp. 881-882, 887.) The court explained: "[T]he Legislature has established specific requirements for a motion to vacate under section 1016.5. Once the Legislature has determined that a noncitizen defendant has a substantial right to be given complete advisements and affords defendant a means to obtain relief by way of a statutory postjudgment motion to vacate, … a denial order qualifies as an 'order made after judgment, affecting the substantial rights of the party' (§ 1237, subd. (b))." (*Id.* at pp. 886-887, fn. & italics omitted.)

By enacting section 1170.126, the electorate provided a statutory procedure for inmates serving indeterminate life sentences imposed under the three strikes law, before its amendment by Proposition 36, to obtain resentencing in accordance with the terms of the amended law. This conferred a substantial right upon such inmates to have a trial court consider whether they should be resentenced. Accordingly, a trial court's denial of a request for resentencing under section 1170.126 — even if it occurs at the conclusion of the first step of the procedure — is an "order made after judgment, affecting the substantial rights of the party," and is therefore appealable pursuant to subdivision (b) of section 1237. (Cf. *People v. Stein* (1948) 31 Cal.2d 630, 632-633 [denial of postconviction motion to be relieved of habitual criminal status under former § 644 constituted appealable order under § 1237; contrast *People v. Pritchett* (1993) 20 Cal.App.4th 190, 194 [order denying defendant's request for resentencing pursuant to

8.

§ 1170, subd. (d) not appealable as order affecting substantial rights of party, because statute did not give defendant right to request such order, but rather permitted recall of sentence on trial court's own motion].)

## II. Defendant was "armed with a firearm" within the meaning of the Act, and so was disqualified from resentencing.

Insofar as we are concerned, defendant's current conviction was for a violation of Health and Safety Code section 11351.5, during the commission of which he was "personally armed with a firearm" in violation of section 12022, subdivision (c).[6] A person is "armed with a firearm" within the meaning of section 12022 if he or she "has the specified weapon available for use, either offensively or defensively. [Citations.]" (*People v. Bland* (1995) 10 Cal.4th 991, 997.) Although section 12022, subdivision (c)'s requirement that the defendant be "personally armed" limits liability to one who actually commits the prohibited conduct, as opposed to imposing vicarious liability (*People v. Bland*, *supra*, at p. 998, fn. 3; contrast § 12022, subd. (a)(1)), it does not require that the defendant physically carry the firearm on his or her person (*People v. Smith* (1992) 9 Cal.App.4th 196, 204; *People v. Gonzales* (1992) 8 Cal.App.4th 1658, 1661-1663; *People v. Mendival* (1992) 2 Cal.App.4th 562, 573-574; *People v. Superior Court (Pomilia)* (1991) 235 Cal.App.3d 1464, 1471-1472.)[7]

---

[6]    The People have not, either here or in the trial court, contended defendant is disqualified from resentencing by any of his other current convictions. Accordingly, we have no occasion to (and do not) decide whether possession of a firearm by a felon constitutes a disqualifying conviction.

The People concede defendant was not disqualified by any of the prior strike convictions that were alleged and defendant admitted, but they say they do not have a copy of his prior criminal record so as to confirm he did not suffer convictions for other disqualifying offenses. We can only go on the record before us. It shows no disqualifying prior convictions.

[7]    Defendant asserts, in his supplemental letter brief, that *People v. White* (2014) 223 Cal.App.4th 512, petition for review pending, petition filed March 10, 2014, supports his position that "arming" means actual physical possession of the firearm. We do not read

9.

The question before us is whether, having been "personally armed with a firearm" in the commission of his current offense within the meaning of section 12022, subdivision (c), defendant "was armed with a firearm" within the meaning of sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii). If he was not, then he is qualified for resentencing under the Act. (§ 1170.126, subd. (e)(2).) As previously described, the trial court rejected the argument that "armed with a firearm" for purposes of the Act means actual possession, i.e., carrying the firearm on one's person or physically holding it. The issue is one of the interpretation of a statute and its applicability to a given situation, a question of law we review independently. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; *Southern California Edison Co. v. State Board of Equalization* (1972) 7 Cal.3d 652, 659, fn. 8; see *People v. Cromer* (2001) 24 Cal.4th 889, 894.)[8]

"In interpreting a voter initiative like [the Act], we apply the same principles that govern statutory construction. [Citation.]" (*People v. Rizo* (2000) 22 Cal.4th 681, 685.) "'The fundamental purpose of statutory construction is to ascertain the intent of the

---

*White* so narrowly. White was convicted of possession of a firearm by a felon. (*Id.* at p. 520.) The *White* court found the "armed-with-a-firearm exclusion" applied because the record showed the defendant "was in physical possession of a firearm" and, therefore, had "ready access" to it. (*Id.* at pp. 523-524.) The *White* court did not hold physical possession was the only circumstance in which a defendant could be found to be armed with a firearm within the meaning of section 667, subdivision (e)(2)(C)(iii), and section 1170.12, subdivision (c)(2)(C)(iii).

[8]     Because the trial court and parties in this case focused solely on defendant's section 12022, subdivision (c) enhancement, which, as we have noted, requires personal arming, we are not confronted with vicarious arming, which exists when a defendant who is not personally armed is a principal in a crime and another principal is armed, possibly without the defendant's knowledge. (See § 12022, subd. (a)(1); *People v. Paul* (1998) 18 Cal.4th 698, 706; *People v. Bland, supra,* 10 Cal.4th at p. 998, fn. 3; *People v. Overten* (1994) 28 Cal.App.4th 1497, 1501-1503.) We express no opinion whether vicarious arming disqualifies an inmate from resentencing under section 1170.126, subdivision (e)(2).

10.

lawmakers so as to effectuate the purpose of the law. [Citations.]'" (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.) "In determining intent, we look first to the words themselves. [Citations.] When the language is clear and unambiguous, there is no need for construction. [Citations.] When the language is susceptible of more than one reasonable interpretation, however, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part. [Citations.]" (*People v. Woodhead* (1987) 43 Cal.3d 1002, 1007-1008.) We also "'refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (*People v. Rizo, supra,* 22 Cal.4th at p. 685.) "Using these extrinsic aids, we 'select the construction that comports most closely with the apparent intent of the [electorate], with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*People v. Sinohui* (2002) 28 Cal.4th 205, 212.) "'""The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible. [Citation.]""'" (*People v. Mohammed* (2008) 162 Cal.App.4th 920, 928.) "'[W]e do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' [Citation.]" (*Horwich v. Superior Court, supra,* 21 Cal.4th at p. 276.)

The language at issue in sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii) — "During the commission of the current offense, the defendant … *was armed with a firearm*" (italics added) — is susceptible of two reasonable interpretations: the broad definition espoused by the People (the defendant had the firearm available for use, either offensively or defensively) and the narrower one endorsed by defendant (the defendant carried the firearm on his or her person). "The

11.

word '[armed]' conveys no self-evident meaning; its import must be gathered from the overall context in which it appears. [Citation.]" (*People v. Woodhead, supra,* 43 Cal.3d at p. 1008.) Accordingly, "[b]ecause the words themselves provide no definitive answer, we must look to extrinsic sources." (*Ibid.*)

Defendant says that because our aim is to interpret the *voters*' intent, we must give the language "its ordinary meaning *as understood by the electorate*," i.e., "the average voter, unschooled in the patois of criminal law .…" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 901, 902, italics added.) Based on his view of "the common lay person's understanding," which he supports with various dictionary definitions, defendant says the electorate understood being "armed with a firearm" to occur where the defendant was carrying a firearm on his or her person while in the perpetration of a crime.[9]

For the most part, however, the dictionary definitions are not so limited.[10] For instance, the first definition of "armed" given by Webster's Third New International Dictionary (1986) at page 119 is "furnished with weapons of offense or defense." The American Heritage Dictionary (2d college ed. 1985) at page 128 defines "armed" as "[e]quipped with weapons." As commonly understood, the state of being furnished or equipped with weapons is broader than carrying a firearm on one's person.

Moreover, it has long been settled that "[t]he enacting body is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted" (*People v. Weidert* (1985) 39 Cal.3d 836, 844), "and to have enacted or amended a statute in light thereof" (*People v. Harrison* (1989) 48 Cal.3d 321, 329). "This principle applies to legislation enacted by initiative. [Citation.]" (*People v. Weidert*, *supra*, at p. 844.)

---

[9] Defendant further suggests an average voter likely would have believed "armed" meant a loaded firearm as opposed to an unloaded one. As he concedes, however, the firearm in his case was loaded. Accordingly, we decline to issue what would amount to an advisory opinion on the subject.

[10] This is true even with respect to the dictionaries consulted by defendant.

12.

Indeed, where, as here, "the language of a statute uses terms that have been judicially construed, '"the presumption is almost irresistible"' that the terms have been used '"in the precise and technical sense which had been placed upon them by the courts."' [Citations.]  This principle [likewise] applies to legislation adopted through the initiative process.  [Citation.]"  (*Id*. at pp. 845-846.)

In enacting Proposition 36, the voters are thus deemed to have been aware of the longstanding judicially construed definition of "armed with a firearm."  Yet they failed to expressly limit the term when amending sections 667, subdivision (e) and 1170.12, subdivision (c) and enacting section 1170.126.  This strongly suggests they intended to disqualify from resentencing those inmates who had a firearm available for use, either offensively or defensively, and not merely those who carried a firearm on their person. (See *Robert S. v. Superior Court* (1992) 9 Cal.App.4th 1417, 1421-1422.)

A conclusion "armed with a firearm," as used in sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii), and as disqualifies an inmate from resentencing pursuant to section 1170.126, subdivision (e)(2), extends to situations in which the defendant had the firearm available for use, either offensively or defensively, is supported by an examination of the statutory scheme as a whole.  The purpose of the three strikes law has been variously stated as being "'to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses'" (*In re Young* (2004) 32 Cal.4th 900, 909) and "to promote the state's compelling interest in the protection of public safety and in punishing recidivism" (*People v. Gipson* (2004) 117 Cal.App.4th 1065, 1070). Although the Act "diluted" the three strikes law somewhat (*People v. Yearwood, supra,* 213 Cal.App.4th at p. 167), "[e]nhancing public safety was a key purpose of the Act" (*id.* at p. 175).  Moreover, section 12022 was enacted "to deter those engaged in felonies from creating a risk of death or injury by having a firearm at the scene of the crime. [Citation.]"  (*People v. Bland, supra,* 10 Cal.4th at p. 1001.)

13.

That such a construction of the term comports with voters' intent is supported by the ballot materials related to Proposition 36. The "OFFICIAL TITLE AND SUMMARY" stated in part that the initiative "[c]ontinues to impose life sentence penalty if third strike conviction was for certain nonserious, non-violent sex or drug offenses *or involved firearm possession*." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) official title and summary, p. 48, italics added.) In summarizing then-existing law, the legislative analysis of Proposition 36 listed, as examples of violent felonies, murder, robbery, and rape; as felonies that were serious but not violent, assault with intent to commit robbery; and as felonies not classified as violent or serious, grand theft (*not involving a firearm*) and possession of a controlled substance. (Voter Information Guide, Gen. Elec., *supra*, analysis of Prop. 36 by Legis. Analyst, p. 48.) In summarizing how the initiative measure would shorten sentences for some third strikers, the Legislative Analyst explained there would be some exceptions to the shorter sentences: "Specifically, the measure requires that if the offender has committed certain new or prior offenses, including some drug-, sex-, *and gun-related felonies*, he or she would still be subject to a life sentence under the three strikes law." (*Id.* at p. 49, italics added.) The legislative analysis further described how certain current third strikers would be resentenced, but explained that Proposition 36 "limits eligibility for resentencing to third strikers whose current offense is nonserious, non-violent, and who have not committed specified current and prior offenses, such as certain drug-, sex-, *and gun-related felonies*." (Voter Information Guide, Gen. Elec., *supra*, at p. 50, italics added.)

In their "ARGUMENT IN FAVOR OF PROPOSITION 36," the measure's proponents spoke in terms of making the punishment fit the crime, saving California money, and making room in prison for dangerous felons. (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 36, p. 52.) In their "REBUTTAL TO ARGUMENT AGAINST PROPOSITION 36," the proponents stated, in part: "Prop. 36 requires that murderers, rapists, child molesters, *and other dangerous criminals* serve

14.

their full sentences.  [¶] … [¶]  Today, dangerous criminals are being released early from prison because jails are overcrowded with *nonviolent offenders who pose no risk to the public*.  Prop. 36 prevents dangerous criminals from being released early.  *People convicted of shoplifting a pair of socks, stealing bread or baby formula don't deserve life sentences*."  (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 36, p. 53, original italics omitted, italics added.)

Section 1 of the proposed law found and declared:

"The People enact the Three Strikes Reform Act of 2012 to restore the original intent of California's Three Strikes law — imposing life sentences for *dangerous criminals* like rapists, murderers, and child molesters.

"This act will:

"(1) Require that murderers, rapists, and child molesters serve their full sentences — they will receive life sentences, even if they are convicted of a new minor third strike crime.

"(2) Restore the Three Strikes law to the public's original understanding by requiring life sentences only when a defendant's current conviction is for a violent or serious crime.

"(3) Maintain that repeat offenders convicted of *non-violent, non-serious crimes like shoplifting and simple drug possession* will receive twice the normal sentence instead of a life sentence.

"(4) Save hundreds of millions of taxpayer dollars every year for at least 10 years.  The state will no longer pay for housing or long-term health care for elderly, *low-risk, non-violent inmates* serving life sentences for *minor crimes*.

"(5) Prevent the early release of dangerous criminals who are currently being released early because jails and prisons are overcrowded with *low-risk, non-violent inmates* serving life sentences for *petty crimes*."  (Voter Information Guide, Gen. Elec., *supra*, text of proposed law, § 1, p. 105, italics added.)

The foregoing materials expressly distinguished between dangerous criminals who were deserving of life sentences, and petty criminals (such as shoplifters and those

15.

convicted of *simple* drug possession) who posed little or no risk to the public and did not deserve life sentences. We do not view the electorate as deeming someone with a firearm available for use, either offensively or defensively, in the commission of a felony to be nondangerous or to pose little risk to the public.[11]

Defendant observes that the Act refers to specific statutory definitions or code sections in some places (e.g., §§ 667, subd. (e)(2)(C)(iv), 1170.12, subd. (c)(2)(C)(iv)), but not in the context of the "arming" basis for disqualification. He argues this implies the electorate intended *not* to use a technical, legal definition of the phrase "armed with a firearm," but rather intended the common, lay definition of the term. We disagree. There are multiple statutes in this state's codes that refer to arming. (E.g., §§ 1203.06, subd. (a)(2), 12022; Health & Saf. Code, § 11370.1, subd. (a).) Some expressly define the term (e.g., § 1203.06, subd. (b)(3); Health & Saf. Code, § 11370.1, subd. (a), 2d par.), while others rely on judicial construction (e.g., § 12022; *People v. Bland, supra,* 10 Cal.4th at p. 997). By not specifically including any, the electorate excluded none. (See

---

[11] Defendant points out that subdivision (c) of section 12022 had been amended, by the time Proposition 36 was enacted, to provide for service of the enhancement term in county jail, not state prison, under so-called realignment legislation. (See Stats. 2011, ch. 15, § 506, eff. Apr. 4, 2011, operative Jan. 1, 2012.) Because one of the Legislature's purposes in enacting realignment legislation was to "[r]ealign[] low-level felony offenders who do not have prior convictions for serious, violent, or sex offenses to locally run community-based corrections programs" as a means of "improv[ing] public safety outcomes among adult felons and facilitat[ing] their reintegration back into society" (§ 17.5, subd. (a)(5)), he suggests, the electorate enacting Proposition 36 is deemed to have known "that the Legislature had designated Penal Code [section] 12022[, subdivision] (c) as [a section] 1170[, subdivision] (h) offense, and … would have understood a Penal Code [section] 12022[, subdivision] (c) enhancement to be 'non-violent' and an offender to be 'low-level.'" As defendant acknowledges, however, offenders with prior strike convictions are precluded from being sentenced pursuant to section 1170, subdivision (h). (§ 1170, subd. (h)(3).) Accordingly, the Legislature's assessment of the seriousness of a section 12022, subdivision (c) enhancement for purposes of realignment does not assist our analysis of electoral intent toward third strike offenders who have firearms available for use in commission of their crimes.

*Gikas v. Zolin* (1993) 6 Cal.4th 841, 852 [under canon of construction *expressio unius est exclusio alterius*, expression of some things in statute necessarily means exclusion of other things not expressed].)

Finally, defendant says we are required to construe section 1170.126 so as to avoid doubts as to its constitutionality. He suggests that there is "very little practical difference" between being "armed with a firearm" within the meaning of section 12022, subdivision (c), and being a felon in possession of a firearm within the meaning of section 29800, subdivision (a). Because someone found guilty of violating section 29800, subdivision (a) (or former § 12021) would be eligible for resentencing under the Act, the argument runs, denying eligibility to someone convicted of essentially the same conduct under section 12022, subdivision (c) could raise difficult equal protection problems.[12]

"If a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable. [Citations.] The basis of this rule is the presumption that the Legislature intended, not to violate the Constitution, but to enact a valid statute within the scope of its constitutional powers." (*Miller v. Municipal Court* (1943) 22 Cal.2d 818, 828; accord, *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 509; see also

---

[12] Citing *People v. Alexander* (2010) 49 Cal.4th 846, 880, footnote 14, and *People v. Burgener* (2003) 29 Cal.4th 833, 860-861, footnote 3, the People say defendant forfeited this argument by failing to raise it in the trial court. Both of those cases dealt with substantive equal protection claims. As defendant points out, however, he is not raising an independent legal claim, but rather is arguing a rule of statutory construction. We find no forfeiture.

*Clark v. Martinez* (2005) 543 U.S. 371, 380-381.)  This presumption applies to initiative measures.  (*People v. Davenport* (1985) 41 Cal.3d 247, 264.)  For this rule of construction to apply, however, "the statute must be *realistically* susceptible of two interpretations and the interpretation to be rejected must raise *grave and doubtful* constitutional questions."  (*People v. Anderson* (1987) 43 Cal.3d 1104, 1146.)

We do not believe either of these factors counsels against our interpretation of "armed with a firearm" as used in the Act.

First, although we have found the phrase to be susceptible of two reasonable interpretations, this is so only when it is considered in isolation.  When the phrase is considered in light of the electorate's intent and the entire statutory scheme, it is not realistically susceptible of defendant's interpretation requiring that the firearm be carried on one's person.

Second, we do not believe our interpretation raises grave and doubtful constitutional questions.  "[A]ll meritorious equal protection claims require a showing that 'the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner.'  [Citation.]  In other words, 'neither the Fourteenth Amendment of the Constitution of the United States nor the California Constitution [citations] precludes classification by the Legislature or requires uniform operation of the law [for] persons who are different … "with respect to the legitimate purpose of the law."'  [Citations.]"  (*People v. Wutzke* (2002) 28 Cal.4th 923, 943-944.)  Thus, "we ask at the threshold whether two classes that are different in some respects are sufficiently similar with respect to the laws in question to require the government to justify its differential treatment of these classes under those laws."  (*People v. McKee* (2010) 47 Cal.4th 1172, 1202.)  Defendant fails to convince us of the requisite similarity here. (Compare *People v. Bland, supra,* 10 Cal.4th at p. 1002 [§ 12022 requires arming to be in commission or attempted commission of underlying felony] with *People v. Jones* (2002)

103 Cal.App.4th 1139, 1148 [former § 12021 does not require commission of additional crime].)

We conclude the trial court correctly found defendant was disqualified from resentencing under the Act. Accordingly, defendant is not entitled to a remand for a determination whether his release would pose an unreasonable risk of danger to public safety.

## **DISPOSITION**

The judgment is affirmed.

_____

DETJEN, J.

WE CONCUR:

_____

LEVY, Acting P.J.

_____

LAPORTE, J.[†]

---

[†] Judge of the Superior Court of Kings County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

19.